# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

| 34 | 1 |
|----|-----|
| 42 | 152 |
| 34 | 1 |
| 44 | 275 |

STATE OF MINNESOTA *vs.* ANTONY CANTIENY.

## July 10, 1885.

**Criminal Law—Venue—Evidence.**—Upon the trial of an indictment the venue may be shown indirectly and circumstantially.

**Same—Homicide in Resisting Arrest.**—In resisting an attempted arrest by a peace officer, even though the arrest be unlawful, the killing of the officer by shooting him is not justifiable, when there is neither danger of great bodily harm or other felony being committed by the officer, nor a reasonable apprehension of such danger in the mind of the person whose arrest is attempted.

**Same—Indictment for Murder—Conviction of Manslaughter—Instructions.**—Upon the trial of an indictment for murder, evidence considered as sustaining a conviction for manslaughter in the second degree. An instruction of the court to the jury that the case did not justify a conviction for manslaughter in either the third or fourth degree, was not erroneous.

**Municipal Corporations—Scope and Title of Ordinance.**—A city ordinance entitled "An ordinance relative to misdemeanors, breaches of the peace, and disorderly conduct," imposing the penalty of fine and imprisonment for public intoxication, for making any noise, riot, etc., and prescribing some other offences, *held* not subject to the objection that it violated a requirement of the city charter that the subject of every ordinance should be expressed in its title, and that no ordinance should embrace more than one subject.

v.34M—1

**Same—Ordinance in Excess of Charter held void pro tanto.**—The charter only authorized the penalty of a fine and imprisonment. The ordinance added "costs of prosecution." This clause of the ordinance *held* void, but the remainder of the ordinance valid.

**Same—Penalty—Discretion of Court.**—An ordinance is not invalid by reason of the amount of the fine or period of imprisonment being left to be determined in each case by the discretion of the court, within a prescribed limit.

**Same—"Noise" in Ordinance Construed.**—The "noise" which the ordinance prohibited construed to mean unreasonable noise, of a nature to disturb the community.

**Criminal Law—Trial—Evidence in Rebuttal.**—Evidence offered by the state in rebuttal, which should have been introduced at an earlier stage of the trial, may be received in the discretion of the court.

**Same—Violation of City Ordinance—Public Offence—Arrest without Warrant.**—The violation of a city ordinance, punishable by fine or imprisonment, is a "public offence" authorizing the arrest of the offender without a warrant, by a peace officer (policeman) in whose presence the offence is committed.

**Same—Dying Declaration.**—Proof of the circumstances under which a dying declaration was made, *held* sufficient to warrant the conclusion of the court that it was made under the conviction of impending death, and that it was admissible in evidence.

**Same—Dying Declaration in Writing, when Admissible.**—Dying declarations in writing not inadmissible, although the facts were drawn out from the deceased and afterwards written down by another and read to the deceased, he assenting to the truth of the written statement.

**Same—Instructions—Newly-Discovered Evidence.**—Various points respecting the charge of the court, and relating to the claim of newly-discovered evidence, considered.

Appeal by defendant from an order of the district court for Hennepin county, *Koon*, J., presiding, refusing a new trial.

*Woolley & Reed,* for appellant.

*W. J. Hahn,* Attorney General, and *F. F. Davis,* for the State.

DICKINSON, J.   The defendant was tried in Hennepin county upon an indictment charging him with the murder of Robert Laughlin in the city of Minneapolis.   By verdict of the jury he was found guilty

of manslaughter in the second degree. Upon a case, and upon affidavits presented as proof of newly-discovered evidence, a new trial was sought, but was refused, and the defendant appealed to this court.

It is claimed that it was not proved that the offence was committed in the county of Hennepin, where the indictment was found; and it is true that no witness testified directly that such was the fact. Yet there is abundant evidence satisfactorily, although somewhat indirectly, proving the venue. Many witnesses, through the use of such words as "here," "here in Minneapolis," and "in this city," and otherwise, locate the commission of the offence concerning which they testified in the place where the trial was had, which also appears to have been the city of Minneapolis. The court was sitting in Hennepin county. Enough is shown upon this point by the testimony of the witnesses Hein, Pray, and Little, as well as by other evidence. The proof was sufficient, although it was indirect. *State* v. *Grear*, 29 Minn. 221.

It was shown, and was not controverted, that Laughlin was a police officer of the city of Minneapolis, and engaged in the discharge of his duties as such on the occasion under consideration. He was shot by the defendant upon the street at about 3 o'clock in the morning of July 26, 1884, and died a few days subsequently from the wound then received. The defendant, with two companions, was in the streets of the city at the hour above named. They had been drinking to some extent, and, as the evidence tended to show, were somewhat intoxicated, noisy, and disorderly. The evidence also goes to show that the deceased attempted to induce the three men to retire from the streets; that they resisted his efforts, and tried to get his club away from him; that, the officer signalling for assistance, the three men then passed along the street, kicking and striking the street-signs as they went, then stopped and began "scuffling;" that the officer then arrested them. After the arrest, the defendant, attempting to escape, ran along the street, pursued by the deceased, who repeatedly called upon the defendant to stop; that during this pursuit, and before the deceased had discharged his pistol, although he had attempted to discharge it, the defendant drew a revolver from

his pocket. The defendant still fleeing, the deceased shot at him, but without effect. The defendant instantly turned and shot the deceased, inflicting a fatal wound.

It appears from the evidence that the defendant knew that the deceased was a police officer.

It is claimed that the verdict was not justified by the evidence. In deciding this question it is immaterial whether we regard the arrest by the officer as unauthorized and illegal, or as the lawful exercise of police authority. In either view of the case the evidence justifies the verdict. One has no legal right to kill another to prevent a mere trespass, unaccompanied by imminent danger of great bodily harm or other felony, and which does not produce a reasonable apprehension of such danger. An attempted unlawful arrest may be resisted by means not greatly disproportionate to the injury threatened; but the killing of the assailant is not justifiable when there is neither danger of great bodily harm or other felony being committed, nor reasonable apprehension of such danger. *Noles* v. *State*, 26 Ala. 31; Gen. St. 1878, *c.* 94, § 10. And the rule is the same in a case where one having been unlawfully arrested attempts to escape. *Reg.* v. *Allen*, 17 Law T. Rep. (N. S.) 222. In such cases the right to kill does not arise unless, in the course of a lawful and not disproportionate resistance of the arrest, the offending party so conducts himself that it becomes necessary, or apparently necessary, to kill him in order to prevent the commission of great bodily harm or other felony. At the common law the taking of life, when not so justified, was at least manslaughter, and, under some circumstances, was even murder. *Com.* v. *Carey*, 12 Cush. 246; Roscoe, Crim. Ev. 576 *et seq.;* 1 Hale, P. C. 457, 458.

Upon the question of justification the case was submitted to the jury upon instructions which were substantially in accordance with the defendant's request. The jury were warranted in concluding that the defendant was not actually or apparently subject to any danger of great bodily harm, but only to a mere arrest, and that any danger to which he might be exposed from the officer using his pistol might have been avoided by submitting to the arrest. It was the duty of the defendant thus to submit rather than to take the life of the offi-

cer. By the verdict the question of justification was conclusively determined against the defendant.

The statute thus defines the offence of which the defendant was convicted:

"The killing of a human being by another in a heat of passion, upon sudden provocation, or in sudden combat, intentionally, but without premeditation, is manslaughter in the second degree."

"Whoever unnecessarily kills another, except by accident or misfortune, and except in cases mentioned in subdivision 2 of section 5 of this chapter," (which relates to justifiable homicide,) "either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act, or after such attempt has failed, shall be guilty of manslaughter in the second degree."

"The killing of a human being by another, without a design to effect death, but with a dangerous weapon, or in a cruel and unusual manner, in the heat of passion, upon sudden provocation, or in sudden combat, is manslaughter in the second degree." (Gen. St. 1878, c. 94, §§ 22, 23, 24.)

In some possible views of the case, not necessary to be considered, since the verdict was for a less offence, the defendant might have been found guilty of one of the higher degrees of criminal homicide. In any possible view of the case, and upon the undisputed facts, the killing was, if not justifiable, at least manslaughter in the second degree, as above defined. If the arrest was lawful, and defendant's resistance unlawful, the correctness of the result already indicated is still more apparent.

The only degrees of criminal homicide less than that expressed in the verdict are the third and fourth degrees of manslaughter. The court, in effect, instructed the jury that this case could not fall within either of those classes. The instruction was correct. The only part of the definition of the third degree of manslaughter which would be claimed as possibly applicable to the case, is that which declares the offence to be an *involuntary* killing, not constituting manslaughter in the first or second degree. By the defendant's own testimony,—and no evidence presents the case in a light more favorable to him,—the killing of the officer by the defendant was not in legal contemplation

"involuntary." He admits that he shot at the deceased, although, as he says, without taking aim. By the terms of the statute the case is excluded from the provision under consideration.

Manslaughter in the fourth degree consists—*First*, of a killing with a weapon not dangerous, etc.; which, of course, has no reference to a case of intentional shooting with a loaded pistol. *Second.* "Every other killing of a human being by the act, procurement, or culpable negligence of another, where such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, is manslaughter in the fourth degree." (Gen. St. 1878, c. 94, §§ 31, 32.) Upon the undisputed facts of this case the act of the defendant was either justifiable, or it was manslaughter in the second degree, or a criminal homicide of a still higher degree. We do not hesitate to declare this as a necessary legal conclusion. It follows that the statute last recited is inapplicable, as is apparent from its terms, and it was proper for the court to so instruct the jury. *State* v. *Rheams, post,* p. 18; Gen. St. 1878, c. 114, § 11.

The receiving in evidence of an ordinance of the city of Minneapolis is assigned as error. The ordinance is entitled "An ordinance relative to misdemeanors, breaches of the peace, and disorderly conduct." It declares that any person who shall make "any noise, riot, disturbance, or improper diversion" shall, upon conviction, be liable to "a fine not exceeding one hundred dollars and costs of prosecution, and imprisonment for a period not exceeding ninety days, either or both, at the discretion of said court." It also subjects to the same penalties persons found in a state of open or notorious drunkenness in any street or public place in the city. The ordinance also contains provisions relating to persons found lying in wait or concealment with intent to commit crime, to riot, to indecent and immoral conduct, and cruelty to animals.

It is first objected that the ordinance does not conform to a requirement of the city charter, which is that "the subject of every ordinance shall be expressed in its title, and no ordinance shall embrace more than one subject." The ordinance is not a violation of this requirement. Such restrictive provisions have been generally, from obvious necessity, construed liberally, and the exercise of con-

ceded legislative power has not been interfered with, and the expressed legislative will declared of no effect, unless it has been clear that the purposes of the restrictive law have not been accomplished. *State* v. *Gut,* 13 Minn. 315, (341;) *State* v. *Cassidy,* 22 Minn. 312. The title, while not specifying the acts which, by the terms of the ordinance, are made criminal, is so suggestive of the nature and scope of the whole enactment that we deem it to have been sufficient to serve the purposes of the charter restriction—that is, to proclaim the general character of the ordinance, and to prevent its enactment being unadvisedly or fraudulently accomplished. Nor does the ordinance embrace more than one subject, as that language has been and should be construed. *County of Ramsey* v. *Heenan,* 2 Minn. 281, (330;) *Tuttle* v. *Strout,* 7 Minn. 374, (465;) *City of St. Paul* v. *Colter,* 12 Minn. 16, (41;) *State* v. *Gut, supra; State* v. *Cassidy, supra.* The one purpose and whole scope of the ordinance is to prohibit certain acts derogatory to peace, good order, and morals, and to enforce the enactment by proper penalties; and all this may be comprehensively said to be the subject of the ordinance. It surely is not necessary that a separate ordinance be enacted with respect to each distinct act to be prohibited.

It is further objected that the ordinance is invalid because the penalty prescribed adds to the fine which may be imposed the *costs of prosecution,* which is not in terms authorized by the charter. Assuming, as we do, that the ordinance contemplates the *costs* authorized by its terms to be an imposition in *addition* to the *fine* which one convicted may be required to pay as a penalty or punishment, we deem it unauthorized by the charter. Costs were unknown to the common law, and the power to impose costs must be found in the statute, or it does not exist. Bish. Crim. Proc. § 1313; *State* v. *Kinne,* 41 N. H. 238. The power to punish by fine does not include the power to add to such a fine as may be deemed a proper penalty for the offence committed, the costs of the prosecution also. But this renders the ordinance void only in respect to the provision as to costs. Otherwise it is valid, complete, and enforceable. The effect and operation of the remainder of the ordinance is not affected by the taking away from the enactment of this unauthorized provision; nor is there rea-

son to suppose that the action of the council in framing or adopting the ordinance was affected in any way, as regards the remainder of the enactment, by considerations involved in the clause which is invalid. It is therefore to be sustained, except as to the words "and costs of prosecution," which are unauthorized. *State* v. *Kantler*, 33 Minn. 69, and cases cited.

The ordinance was not invalid because the amount of fine or period of imprisonment was left to be determined in each case by the discretion of the court, the extreme limit only being prescribed. 1 Dill. Mun. Corp. § 341, (275.)

The ordinance was effectual to prohibit drunkenness in the streets. We think, too, that it was a valid prohibition of the making of any unreasonable "noise" of a nature to disturb the community, such as shouting upon the streets at night, even though it should so happen that no one was, in fact, aroused from sleep, alarmed, or disturbed. It would always be a question to be determined upon trial whether any particular conduct was of such a character as to be within the prohibition.

As to so much of the ordinance, at least, as is applicable to the facts in this case, it is expressly authorized by the charter.

The state first offered the ordinance in evidence upon rebuttal. It was within the discretion of the court to receive the evidence at that stage of the trial. *State* v. *Staley*, 14 Minn. 75, (105.) The tendency of this evidence was to show that the officer had authority to arrest the defendant, and hence that the defendant had no right to resist the arrest.

But it is claimed that, admitting the ordinance to be valid, and that the defendant was engaged in violating it in the presence of the officer, the officer had no right to arrest without a warrant, because, as is said, the breach of the ordinance did not constitute a public offence. We hold the contrary. The charter expressly confers upon the police officers of the city, in addition to other powers, the powers of constables at common law and by the laws of the state. The statute of the state authorizes any peace officer to arrest, without warrant, for a "public offence committed or attempted in his presence," (Gen. St. 1878, *c.* 105, § 11,) although the offence does not amount

to a breach of the peace. *Wahl* v. *Walton*, 30 Minn. 506. The term "offence" here used is defined to be "a breach of the laws established for the protection of the public, as distinguished from an infringement of mere private rights,—a punishable violation of law." Abb. Law Dict. "The doing that which a penal law forbids to be done, or omitting to do what it commands." Bouv. Law Dict. The term "public offence" means no more. The word "public" was not intended to express the idea of a distinction between offences made such by common law or by general statute, and those defined by a law having but a limited territorial operation. We think the term "public offences," as here employed, has the signification which would ordinarily be put upon such terms, and bears no peculiar meaning. It includes all such violations of municipal ordinances as are punishable by fine or imprisonment. The right to arrest without warrant for infractions of such ordinances was assumed in *Wahl* v. *Walton*, *supra*, although it was not questioned in the points presented for discussion. The right is sustained in *Scircle* v. *Neeves*, 47 Ind. 289; *State* v. *Freeman*, 86 N. C. 683; *Mitchell* v. *Lemon*, 34 Md. 176; *Roddy* v. *Finnegan*, 43 Md. 490. The charge of the court upon this point was not erroneous, nor was it for any reason prejudicial to the rights of the defendant.

It is assigned as error that the dying declaration of Laughlin was received in evidence. It was made in the morning, two days after the wound was received. Laughlin died in the evening of the same day. It appeared that a priest of the Roman Catholic church had administered to Laughlin the last rites of that church, prescribed for dying persons, in which Laughlin had intelligently participated, as only one familiar with the rites of the church could do. At some time before the declaration was made, Laughlin, upon being asked whether he felt as though he was going to die, replied that he did, and said that he did not think he would live to see the trial. And shortly after the declaration in question he said that it was hard to die. The wound was of a nature to naturally cause in the mind of any person grave apprehensions that it might be fatal. It was for the court to consider, from the evidence, whether the declaration was made under circumstances rendering it admissible, and to determine whether it

should go to the jury as evidence. 1 Phillipps, Ev. 296–298.; Steph. Dig. Ev. *c.* 4, art. 26; Wharton on Homicide, 768. The facts and circumstances to which we have referred seem to us to have been sufficient to warrant the conclusion of the court that the declaration was made under a conviction of impending death, and without hope of recovery. It was therefore properly allowed to go to the jury. *Com.* v. *Casey,* 11 Cush. 417; *Murphy* v. *People,* 37 Ill. 447; *People* v. *Sanchez,* 24 Cal. 17; *Smith's Case,* Lewin, Cr. Cas. 81; Wharton on Homicide, 748 *et seq.*

The declaration thus presented was in a writing which was made by one Carrigan, in the presence of Laughlin and of one Kennedy. The facts of the case were drawn out from Laughlin by Carrigan, who then put the same in the writing. Some facts were suggested by Kennedy, to which Laughlin assented. The writing was then read to Laughlin, who assented to its correctness by a signature, and by responding "Yes," in answer to a question as to whether he swore to it. The manner in which the instrument was made was not such as to render it inadmissible as the declaration of the deceased. Wharton, Crim. Ev. § 300; *Com.* v. *Casey, supra; Murphy* v. *People, supra; People* v. *Sanchez, supra.*

A preliminary statement in the writing as to the present condition of the declarant, not read to him, nor made by him, formed no part of the declaration, and was properly excluded.

The point cannot be sustained that the court, in its instructions as to what would justify the homicide, omitted the element of danger, *reasonably appearing to the defendant to exist,* although not actually existing. The charge, as given, was not subject to such objection.

The sixteenth request, refused by the court, was inapplicable to the uncontroverted facts of the case. The killing was not "without excessive force." The resistance of a mere arrest, although unlawful, by shooting the wrong-doer and taking his life, is "excessive." The law upon this subject was fully given to the jury in other parts of the charge.

The seventeenth request, refused, involved the proposition, which the court was requested to present to the jury, that an arrest of the defendant, "merely because he was noisy on the street, late at night,"

was unlawful. As we have already said, unreasonable noise, of a nature to disturb the community, was a penal offence under the ordinance, and a just cause for arrest. The court could not, without qualification, present this proposition as a statement of law.

The fourteenth request was fully and more satisfactorily presented to the jury in response to the eleventh request, and in other parts of the charge.

The refusal of the eighteenth request is claimed to have prejudiced the defendant, because the principle involved affected the grade of crime of which the defendant might be deemed guilty. Granting this to be so, it furnishes no reason for a new trial in this case; because, as has been already declared, the conviction was for the lowest degree of criminal homicide legally possible, upon the undisputed facts.

The court properly omitted the words "common or statute," in presenting the defendant's twenty-first request to the jury. The substance of the request was that the offences for which an arrest might be made without a warrant embraced "only acts or omissions prohibited by positive law, common or statute." This would naturally be understood by the jury as excluding municipal ordinances. We have already declared that arrests may be made without a warrant for a breach of penal ordinances.

The twenty-fourth and twenty-fifth requests relate to the sufficiency of the evidence to warrant a conviction for murder in either degree, and, even if erroneous, as we think they were not, it is now apparent that they did not actually prejudice the defendant. His conviction for manslaughter in the second degree has rendered unimportant considerations relating only to the higher degrees of criminal homicide. Respecting alleged errors which might have led the jury to return a verdict of guilty of any of such higher degrees of crime, it is now enough to say that no such result was accomplished.

These remarks are applicable to several other exceptions to portions of the charge relating merely to the higher offences, of which the defendant now stands acquitted.

It remains only to consider the claim of newly-discovered evidence. What is alleged in the affidavit of Strathdee would be merely cumu-

lative evidence, and not a sufficient ground for a new trial.    *State* v.
*Wagner*, 23 Minn. 544.    The affidavit of McAlpine goes to show that
Laughlin was intoxicated and drinking at a time about three hours
before the shooting; and the affidavit of Maher perhaps tends to show
that he was intoxicated after the shooting, although this seems not to
be very satisfactory proof of prior intoxication, in view of the uncon-
troverted fact that *after* he was shot intoxicating liquor was given to
him.    But, aside from this, a new trial ought not to be granted upon
these affidavits.    The defendant and one of his companions, Gorman,
as witnesses, detailed the occurrences with which Laughlin was con-
nected.    They had opportunity to discover, if the fact was so, that
Laughlin was intoxicated.    Other persons having like opportunity
to know the facts testified as witnesses, yet no attempt seems to have
been then made to show such fact.    This alone is a sufficient reason
for the refusal of the motion.

We do not find in the case any error prejudicial to the defendant.
The order refusing a new trial is therefore affirmed, and the sentence
of the district court will be carried into execution.