THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ADOLPH BUETTNER, Plaintiff in Error.

*Opinion filed February 20, 1908—Rehearing denied April 9, 1908.*

1. CRIMINAL LAW—*dying declarations are based upon fixed belief in impending death.* Dying declarations are rendered admissible because of the fact that they are made in extremity, under the fixed belief of the declarant that his death is impending and certain to follow almost immediately, as such circumstance furnishes a strong incentive to speak the truth.

2. SAME—*belief in impending death need not arise from declarant's personal feelings.* The fixed belief in inevitable and imminent death which must be entertained by a declarant to render her statement admissible as a dying declaration may be induced by the statements of her nurse and physician, and it is not essential that her approaching death, which occurred within an hour after her statement was made, be presaged by her own personal feelings.

3. SAME—*fact that the declarant has received last sacrament is strong evidence of fixed belief in imminent death.* The fact that the declarant, after being advised by her nurse and physician that she was probably very near death, sends for a priest and receives the last sacrament before making her statement is strong evidence that she had a fixed belief in inevitable and imminent death, even though she afterwards stated, in answer to a question, that she felt "very well."

4. INSTRUCTIONS—*what does not preclude searching evidence for a reasonable doubt.* A statement in an instruction that "the doubt, however, must be real—not chimerical or fanciful; not a doubt which is sought for, but one which arises naturally from the case," etc., does not preclude the jury from searching the evidence to determine whether there is a reasonable doubt, where the instruction, taken as a whole, clearly permits the jurors to base their reasonable doubt upon the entire evidence or a lack of evidence.

5. SAME—*the fact that instruction is too long is not, of itself, ground for reversal.* The giving of an instruction which is unnecessarily long but which contains no statements which are incorrect or inapplicable to the case is not ground for reversal, although the practice of giving such instructions is not to be approved.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

JOHN E. W. WAYMAN, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN J. HEALY, State's Attorney, and JOHN E. NORTHUP, for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The plaintiff in error, Adolph Buettner, was jointly indicted and tried with Patrick O'Connell in the criminal court of Cook county, at the July term, 1907, for the murder of Nellie Walsh. Upon the trial the jury found a verdict of not guilty as to O'Connell and a verdict of guilty of manslaughter as to plaintiff in error.

The indictment charged that the death of Nellie Walsh was caused by an attempt to produce an abortion. In some of the counts of the indictment it was charged that an abortion was produced by the use of some instrument the description of which was unknown to the grand jurors. In other counts a catheter was alleged to have been used, and in others it was charged that the abortion was produced by means of the fingers of the right hand.

Plaintiff in error was a physician and had been engaged in the practice of medicine in Chicago for a number of

years. Since plaintiff in error does not contend that the verdict is not supported by the evidence no extended statement of the facts will be necessary.

The only errors assigned are, that the court erred in admitting in evidence two written statements of deceased which were received as dying declarations, and that the court erred in giving two instructions.

The statements of the deceased which were objected to were in writing, and are as follows:

"*February 12, 1907.*

"I, Nellie Walsh, make this statement while in sound mind and know I am about to die. The name of the physician who performed the abortion on me Wednesday, sixth day of February, 1907, is Dr. Buettner, Clybourn, near North avenue.　　NELLIE WALSH.

Witnesses: Cora Bachino, Annie Edwards."

"CHICAGO, *Feb. 12, 1907.*

"I, Nellie Walsh, of the city of Chicago, county of Cook and State of Illinois, while in sound mind and know I am about to die, make this statement: That on Wednesday, February 6, 1907, Dr. Buettner, Clybourn avenue, near North avenue, performed an abortion on me at my request, he making the statement that there would be no danger.　　NELLIE WALSH.

Witnesses: Cora Bachino, Head Nurse; C. F. Goltra."

The deceased was taken to the National Emergency Hospital on the 11th of February, 1907. She was in a very critical condition. An operation was performed on her at four o'clock on the same day. The operation consisted in curetting the womb. On the next day the deceased was informed by her nurse that she was in a very critical condition. Dr. Nelson, who was in charge of the case and on whose advice she was taken to the hospital, also informed the deceased that he had no hopes for her. The deceased was a Catholic. The nurse asked her if she wanted a priest. The deceased said, "Do you think I will die?" and upon her being answered, "Very likely you will die," the deceased requested that a priest be sent for. The priest was called somewhere between nine and eleven o'clock. He came and administered to the deceased the last sacrament. A few

minutes afterwards the deceased signed the last statement. When the deceased was inquired of, before making the statements, how she felt, she replied that she felt very good. The statements introduced in evidence were written, the first one by the nurse and the last one by the stenographer, who copied it on the typewriter, and both of them were read to the deceased, who said that she understood them. The evidence shows that the deceased was entirely rational at the time these statements were made. She died in less than an hour from the time she signed the last statement.

Dying declarations are such as are made by the party, relating to the facts of the injury of which he afterwards dies, under the fixed belief and moral conviction that his death is impending and certain to follow almost immediately, without opportunity for repentance and in the absence of all hope of avoidance,—when he has despaired of life and looks to death as inevitable and at hand. (*Starkie* v. *People,* 17 Ill. 17; *Tracy* v. *People,* 197 id. 101; *Digby* v. *People,* 113 id. 123; *Westbrook* v. *People,* 126 id. 81.) Another definition which has been approved by this court, which does not differ materially from the one quoted above, is, that "they are declarations made in extremity, when the party is at the point of death and when every hope of this world is gone,—when every motive of falsehood is silenced and the mind is induced by the most powerful considerations to speak the truth." 1 Greenleaf on Evidence, sec. 156; 1 Wharton on Crim. Law, sec. 668; *Westbrook* v. *People, supra.*

The only objection urged to the declarations which were read in this case is, that the preliminary proof did not show that Nellie Walsh made the statements under a fixed belief and moral conviction that her death was impending and certain to follow almost immediately. That the condition of the declarant was very grave at the time these statements were made is conclusively shown by the fact that she was then suffering from an injury which caused her death a

short time after the last statement was signed. The only
question is, had she at that time despaired of life and did
she look to death as inevitable and near at hand. When
asked by her nurse how she felt, she replied on two occa-
sions, "I feel good;" "Very well." From these expres-
sions we may assume that there was nothing in the feelings
of the declarant that presaged her approaching dissolution.
Still, if she had abandoned hope of life and looked on death
as certain to follow immediately the declarations would be
admissible, even though she was brought to this state of
mind by the statements made to her by her nurse and phy-
sician. The important question is, did the deceased have a
fixed belief that she was certain to die soon? If this was
the state of her mind, it is no objection to her declarations
that her belief was induced by the statements of her nurse
and physician. In *People* v. *Lonsdale,* 122 Mich. 388, it
was held that when the physician attending upon a woman,
the victim of an abortion, told her that she was a very sick
girl; that he could promise her nothing in the way of re-
covery, but that he would simply promise to do all that
medical skill was able to do under the circumstances, and
that she must go to a hospital; that she seemed to realize
that she was liable to die and looked like a person dying at
the time and realized it after he told her this,—her state-
ment as to who produced the injury and how it was done
is competent evidence. (See, also, *Simons* v. *People,* 150
Ill. 66.) The fact that the deceased manifested a desire for
the consolations of religion and caused a priest to be sent
for shows that the statements made to her by the nurse and
physician had brought her to a fixed belief that death was
near at hand. Evidence that a person whose dying declara-
tions are offered in evidence had received extreme unction
is admissible as showing the circumstances under which a
declaration was made. (*Carver* v. *United States,* 164 U. S.
694.) The expression of the desire of the deceased for the
consolations of religion, and especially when the particular

religion or church of the deceased provides for the admin-
istering of certain rites to its members when, and only
when, they are actually *in articulo mortis,* has always been
regarded by the courts as one of the strongest proofs that
the deceased is in that condition of mind which is requisite
to the admission in evidence of his statements as dying dec-
larations.  Among the many cases so holding the following
may be cited:  *Hammil* v. *State,* 90 Ala. 577; *People* v.
*Lee,* 17 Cal. 76; *State* v. *Swift,* 57 Conn. 496; *State* v.
*O'Brien,* 81 Iowa, 88; *State* v. *Wilson,* 24 Kan. 189; *State*
v. *Cantineny,* 34 Minn. 1; *State* v. *Trivas,* 32 La. Ann.
1086; *Cook* v. *State,* 22 Tex. App. 511; *Carver* v. *United
States, supra.*  Finally, it is to be noted that in each of the
statements signed by deceased there is an unequivocal state-
ment that the declarant knew she was about to die.  Under
the circumstances shown to exist we have no doubt that the
statements received in evidence were made under the requi-
site conditions to entitle them to admission in evidence as
the dying declarations of Nellie Walsh.

It is next urged that the court erred in giving, on its
own motion, the following instruction:

"The indictment in this cause is no evidence of guilt,
but every material allegation alleged therein,—and I mean
by that every allegation necessary to constitute the crime
charged,—must be proved beyond a reasonable doubt and
to a moral certainty.  The defendant is presumed to be in-
nocent, and this presumption of innocence continues until,
taking the evidence all together, there remains no reason-
able doubt as to his guilt.  Nor will mere probabilities or a
mere preponderance of evidence against him satisfy the re-
quirements of the law.  Before you can find him guilty you
must establish his guilt, as I have said, beyond a reasonable
doubt; and this presumption of the law is not an idle form
to be disregarded at pleasure, but is a substantial right of
the defendant, and such doubt may arise from the evidence
actually offered or from a lack of evidence.  The doubt,

however, must be real,—not chimerical or fanciful; not a doubt which is sought for, but one, which arises naturally from the case and which is not a doubt produced by undue sensibilities on the part of the jurors as to the consequence of their verdict. Taking the case altogether, if there remains any reasonable hypothesis consistent with the innocence of the defendant you must acquit him."

The objection which is pointed out to this instruction relates to the sentence: "The doubt, however, must be real,—not chimerical or fanciful; not a doubt which is sought for, but one which arises naturally from the case and which is not a doubt produced by undue sensibilities on the part of the jurors as to the consequence of their verdict." Plaintiff in error contends that the phrase, "not a doubt which is sought for," cuts off the right of the jury to search the evidence to determine whether there is a reasonable doubt of guilt. We think this objection not well taken. When the entire instruction is read, it is apparent that the instruction does not in any way limit the right of the jury to consider the entire evidence. In the sentence immediately preceding the one objected to, the court informs the jury that "such doubt may arise from the evidence actually offered or from a lack of evidence," and in the concluding sentence the instruction tells the jury that, "taking the case altogether, if there remains any reasonable hypothesis consistent with the innocence of the defendant you must acquit him." The instruction is not open to the criticism made upon it by plaintiff in error.

It is next insisted that the court erred in giving the following instruction:

"The meanings of the phrases 'reasonable doubt' and 'moral certainty' are difficult to put in words. It will be observed that in order to sustain a conviction it is not necessary to establish the guilt of a defendant to an absolute certainty, but only to a moral certainty. Absolute certainty is seldom obtainable in any case where there is a conflict of

proof. Nor is it necessary that the guilt of the defendant be established beyond all doubt but only beyond all reasonable doubt, for it is seldom, in matters of serious controversy, that a question can be decided beyond every kind of doubt. Nor will the fact itself, if such be the fact, that the question of guilt or innocence submitted to you is difficult of solution constitute a reasonable doubt if by a careful consideration and deliberation that solution may, in fact, be established according to law. But if, after a careful scrutiny of the whole case, including a careful weighing of the testimony of the witnesses according to the rules given you in these instructions and a conscientious consideration of the law, there arises in your mind, spontaneously and naturally, without being sought after, an uncertainty concerning the guilt or innocence of the defendant, which uncertainty is of the weight and quality that if interposed in any of the graver transactions of life it would check your final judgment, causing you to pause and hesitate, then such uncertainty amounts to a reasonable doubt. In other words, unless you have an abiding conviction of the guilt of the defendant you must acquit him. But, on the other hand, if you believe the defendant has been proven guilty under the law and the evidence, beyond a reasonable doubt, you must convict him, even though doubts remain in your minds which do not amount to reasonable doubts. So, also, you must convict him if his guilt be established to a moral certainty but though it be not established to an absolute certainty."

The criticism made of this instruction is substantially the same that has already been considered upon the previous one. The case of *Morello* v. *People,* 226 Ill. 388, is cited and relied on by plaintiff in error as an authority condemning this instruction. By reference to the case cited it will be seen that the only resemblance between the instruction under consideration in that case and the one here involved is the fact that both instructions are long. In speaking of

the instruction in the *Morello case,* on page 399, this court said: "The instruction is unnecessarily long, covering more than a page of the printed abstract, and this increased the possibility of the jury being confused thereby. The simple propositions covered should have been concisely stated in a dozen lines. Instructions of the general character of this one do not meet with the unqualified approval of this court, even when the language is accurate. They are apt to be found persuasive by a jury." We fully agree with plaintiff in error that the instruction in question is too long, and that the criticism made by this court in the *Morello case* may well be applied to both of the instructions given by the court of which complaint is made. While we do not approve of the practice of giving long statements to juries in the way of instructions, we have not yet gone to the extent of reversing a judgment, otherwise free from error, because of the length of the instructions. We are not inclined to establish a precedent of that character in this case.

Finding no reversible error in the record the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*