## STATE v. PHILIP MUELLER.[1]

June 6, 1913.

Nos. 18,091—(10).

**Criminal abortion — ante mortem statement — charge to jury.**

Defendant was convicted of manslaughter in the first degree under an indictment charging in effect that he caused the death of a woman by the use of instruments in attempting to produce an illegal abortion. It is *held:*

(1) The verdict is sustained by the evidence.

(2) An ante mortem statement of deceased was properly received in evidence as a dying declaration, it appearing that the declarant was in extremis and realized her condition.

(3) It was not error to fail to instruct the jury that dying declarations should be received with caution, or to fail to give to the jury rules and tests for determining the truth and accuracy of such declarations, in the absence of a request for such instructions, and in view of the instruction given covering the subject.

(4) Though it be true that the jury may disregard the statements in a dying declaration, if they believe it was not made when the declarant was in extremis and had abandoned all hope of recovery, it was not reversible error to fail to so expressly instruct the jury, in the absence of a request, and in view of the instructions actually given.

(5) It was not error to refuse to strike out as conclusions or opinions of the declarant certain statements in the dying declaration.

(6) An inadvertently incorrect statement by the court during the course of the trial in the hearing of the jury as to the issue in the case, not excepted to, is not ground for reversal, the court clearly and correctly stating the issues in its charge.

[1] Reported in 141 N. W. 1113.

Note.—The question of dying declarations, generally, is treated in an extensive note in 56 L.R.A. 353. And as to dying declarations in prosecution for homicide by commission of, or attempt to commit, abortion, see note in 63 L.R.A. 916.

For right of jury to determine existence of facts essential to the admissibility of dying declarations, see note in 16 L.R.A. (N.S.) 660.

As to how long before death dying declarations may be made, see note in 1 L.R.A. (N.S.) 419. And as to how sense of impending death is evidenced, see note in 30 L.R.A. (N.S.) 391.

(7) Certain assignments of error relating to an instruction to the jury and to certain rulings on the admission of evidence considered and *held* to be without merit.

Defendant was indicted by the grand jury of Hennepin county of the crime of manslaughter in the first degree, in causing the death of a woman by the use of instruments in attempting to procure an illegal abortion, and was convicted in the district court of that county after a trial before Steele, J., and a jury. From an order denying defendant's motion for a new trial, he appealed. Affirmed.

*W. E. Hewitt* and *Armstrong & Nash,* for appellant.

*Lyndon A. Smith,* Attorney General, and *James Robertson,* County Attorney, for respondent.

BUNN, J.

Defendant was convicted of manslaughter in the first degree under an indictment based upon R. L. 1905, § 4882, and appeals from an order denying a new trial.

The indictment charged in substance that on April 27, 1912, defendant employed upon the body of one Edna M. Magnuson certain instruments with intent to produce a miscarriage, and did thereby inflict upon her body mortal wounds and injuries of which she died on May 17, 1912. We do not state in more detail the allegations of the indictment or the provisions of the statute under which it was drawn, as the sufficiency of the indictment is not questioned. In brief the charge was that defendant caused the death of Mrs. Magnuson by the use of instruments in attempting to produce an illegal abortion. Aside from alleged errors in certain rulings on the admission of evidence, and instructions to the jury, to be noticed later, the burden of defendant's argument here is that the evidence was insufficient to sustain a verdict of guilty. Without going into detail, for reasons that are apparent, the evidence may be summarized as follows:

Mrs. Magnuson was a married woman. She died May 17, 1912. In an ante mortem statement made by her on May 14, and received in evidence as a dying declaration, she declared that she visited de-

fendant, a practising physician in Minneapolis, April 29, in his office, and expressed to him her desire to have something done which would remove the condition that she believed herself to be in. She stated that defendant placed her upon a table in his private room and used physical means to secure the desired end, but was unable to give a description of any instrument used. This was about noon. She then left defendant's office and went home, and, as it appears, spent the evening with her husband in an automobile ride to St. Paul. On the following day she was suffering severe pains. Defendant was called, made an examination, curetted the womb, and left a prescription. He called again a day or two later. Deceased continued to suffer pains, but returned to her work for three days, and was then taken ill again. Another physician was called on May 11. He made an examination and found an inflamed and septic condition. The patient was removed to the hospital, and an operation performed on the thirteenth. She died early in the morning of the seventeenth. An autopsy was held, and the physicians attending testified that they determined the cause of death as acute inflammation of the parts due to infection.

Defendant testified on his own behalf, admitted attending plaintiff and treating her, but denied her story of what happened on the visit to his office.

Without discussion of the evidence further, and without attempting to demonstrate the correctness of our conclusion, but after a full consideration of the record, we hold that the evidence, if believed, justified a verdict of guilty. This means that it justified a finding that the statements in the dying declaration as to the acts of defendant on the occasion of the woman's visit to his office, and on the subsequent visits of defendant at the home, were true, and also a finding that the death was caused by the acts of defendant on the first occasion. It was clearly for the jury to believe or disbelieve the statements in the dying declaration, and we find no ground for saying that these statements were unworthy of belief. On the contrary we can easily understand how a jury might more readily give credence to the story told by Mrs. Magnuson on her death bed than to the story told by defendant on the stand.

It is perhaps less free from doubt whether the death was caused by the illegal operation. But we are unable to say that the evidence did not justify the jury in believing beyond a reasonable doubt that the death of Mrs. Magnuson was caused by defendant's use of instruments in the attempt to produce an abortion.

It is contended that the statements of deceased were improperly received in evidence as a dying declaration. The ground for this contention is that Mrs. Magnuson, before her statement was taken, answered "I don't know" in response to the question, "Do you believe you will get better." It is claimed that this shows that she had not abandoned hope of recovery. But she immediately after this stated that she believed she was going to die, and had given up all hopes of recovering. Her operation had been the day before, and it is clear that she was in extremis in fact, and we think also clear that she understood her condition. We hold that her statement was properly received as a dying declaration.

We will next consider the claim that there was reversible error in the charge on the point of the weight to be given by the jury to the dying declaration. It is urged that the court should have instructed the jury that dying declarations should be received with caution, and that rules and tests for determining the truth and accuracy of such declarations should have been given. There was no request covering this subject. The court used the following language in its charge:

"The dying declaration of the deceased has been admitted in this case. It is competent and proper testimony, but its weight and credibility is for you to determine the same as any other evidence. It is for you to say what weight and credibility you should give it, just the same as any other evidence in this case."

It is not claimed that this instruction was not correct as far as it went; the claim is that it did not go far enough. The question involved is disposed of adversely to defendant's contention in State v. Pearce, 56 Minn. 226, 57 N. W. 652, 1065. The instruction held in that case to be a "fair and correct statement of the law" was not substantially different from the one given in the instant case. In the Pearce case there was a request to instruct the jury "that the decla-

rations of the deceased are not to be received with the same credit as though she had testified to the same under oath, upon examination." It was held not error to refuse this request, that the instructions given were sufficient, and that a court should not assume to determine for the jury the degree or amount of credit which should be given to the evidence. As pointed out in the Pearce case, there are some authorities that speak of the weakness of evidence of dying declarations, because of the absence of an oath, and the lack of opportunity for cross-examination, but this court in the case cited quotes with approval the rule that "the persons whose declarations are thus admitted are considered as standing in the same situation as if they were sworn, the danger of impending death being equivalent to the sanction of an oath." 1 Taylor, Ev. 625; 1 Greenleaf, Ev. § 147. We hold that the instruction given by the court in this case was sufficient, in the absence of any request to more fully point out the rules and tests which should guide the jury.

Defendant urges that it was error not to instruct the jury that they should determine whether the declarant was in extremis and realized her condition, and that they might disregard the statement if they believed it was not made when the declarant was in extremis and was conscious of her condition. We may concede that it is the law that, after the court has decided that the declaration is admissible, it is still the province of the jury to decide as a fact that the declaration was not made when the declarant was in extremis and had abandoned all hope of recovery. 21 Cyc. 985. But we are not prepared to hold that the failure to so expressly instruct the jury is reversible error in the absence of a request. We think that the instructions given, including the one we have above quoted, sufficiently apprised the jury of their right and duty to judge of the credibility of the witnesses and their testimony, including the dying declaration, and the testimony of the witnesses who repeated it. State v. Pearce, supra. Had defendant requested specific instructions covering the matters he now claims the court should have mentioned in its charge, and had the court declined to give the requests, a different question would be presented. We hold that there was no reversible error here.

It is claimed that portions of the declaration of deceased were her conclusions and opinions, and that these portions should have been stricken out, under the rule that a dying declaration should consist solely of facts, and not of conclusions or opinions. We have no quarrel with the rule, but fail to see that it was violated in the refusal to strike out the matters in question.

It is assigned as error that the court stated in the hearing of the jury that "the only question here is whether an abortion has been performed or not." This was not an instruction, but appears to have been an inadvertent statement made during the course of the trial and not excepted to. The charge was clear and specific on the proposition that it was necessary to prove not only the abortion, but that death resulted. The remark quoted could not have misled the jury.

There is no merit in the assignment of error relating to the instruction impressing upon the jury the importance of the case to the state. The court was equally emphatic in stating its importance to defendant.

It was not error to exclude from evidence the notes taken by the physicians who performed the autopsy and testified for the state. It is not suggested that the testimony differed from the statements in the notes, though there was full opportunity to discover any such difference, and it is not claimed that such statements would have any tendency to impeach the testimony of the physicians. Clearly, the materiality of the excluded evidence did not appear, and the ruling was correct.

Nor was it error to exclude from evidence the account book of defendant, showing the visit of Mrs. Magnuson, and a charge of two dollars. This had no bearing on the question of defendant's guilt or innocence.

Our conclusions are that the evidence supports the verdict of guilty, and that defendant had a fair trial conducted without error, or at least any error which calls for a reversal.

Order affirmed.