COMMONWEALTH *vs.* JAMES B. MORRIS.

Bristol.      May 21, 1928.— July 10, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Evidence*, Admissions, Competency.   *Abortion.*

At the trial of an indictment charging that the defendant unlawfully used an instrument upon the body of a woman with intent to procure a miscarriage, there was evidence that the defendant, having assented to a request by two police officers that he accompany them to a hospital where the woman was, drove one of the officers there in his own automobile, and that, in his presence, she made a statement incriminating him; that he then was asked if he knew the woman and answered, "Yes"; that he then was asked: "Have you anything to say?" and answered: "Not at all.   I have nothing to say." The defendant then returned to his office.   The woman died the next day and a warrant for the defendant's arrest then was issued.   The defendant excepted to the admission of the evidence.   *Held*, that the defendant was not under arrest at the hospital, and the evidence was admissible: whether the conduct of the defendant after he heard the woman's charges amounted to an admission of their truth was a question for the jury.

After the testimony above described had been given, one of the police officers, who was present at the time the statement was made, in cross-examination said in substance that he did not intend that the defendant should escape and that he kept in touch with the defendant's movements. The defendant then moved that the testimony be struck out, contending that, being under arrest, his conduct could not be treated as evidence against him.   The motion was denied.   *Held*, that the motion properly was denied, the question, whether the defendant was in custody still being for the jury under proper instructions.

At the trial of the indictment above described, it was proper to exclude
testimony of the defendant as to statements made to him by the woman
when she first came to him for treatment as to her condition and symp-
toms connected with it; such testimony was incompetent, and it was
not necessary for the court to consider whether, otherwise, it would be
admissible under G. L. c. 233, § 65.

INDICTMENT, found and returned on February 10, 1928,
charging that the defendant unlawfully used a certain in-
strument upon the body of Mary Sylvia with intent to pro-
cure her miscarriage, and that in consequence thereof she
died.

The indictment was tried on February 27, 28, 1928, before
*Williams*, J. Material evidence and exceptions by the de-
fendant are stated in the opinion. A verdict of guilty was
returned, and the defendant appealed and assigned errors
based on his exceptions.

*F. Vera & W. S. Downey,* for the defendant, submitted a
brief.

*F. E. Smith,* Assistant District Attorney, (*E. J. Harrington,*
Assistant District Attorney, with him,) for the Common-
wealth.

BRALEY, J. The defendant was indicted, tried and con-
victed under G. L. c. 272, § 19, for an unlawful attempt by
the use of a certain instrument upon the body of Mary Sylvia
to procure her miscarriage, in consequence of which she died.
There were no requests for rulings or exceptions to the in-
structions by the defendant and the assignment of errors
relates to the admission and exclusion of evidence. The
uncontradicted evidence for the Commonwealth showed
that death was due to septic poisoning caused by inflamma-
tion and decomposition in the uterus of part of the afterbirth.
While an inmate of a local hospital, to which she went on the
advice of Dr. Robert, who had been called to her home, she
made statements in the presence of the defendant concerning
the cause of her condition, which were not admissible as
dying declarations under G. L. c. 233, § 64, but which were
made in the presence of the defendant in response to ques-
tions asked by a policeman, one of the officers charged with
the investigation of the case, and taken by a stenographer.

It appeared from these statements that, being pregnant, she went, accompanied by her husband, to the defendant's office, and asked him "if he thought it was too late for me to have something done, and he said, 'No, I don't think so.' He inserted something in my vagina and gave me some medicine to take internally. I had pains in my vagina, continual bleeding, and chills. Dr. Morris made one visit. On December 23, my mother called the family doctor, Dr. Robert, who advised me to go to the hospital." Mrs. Sylvia further said that the defendant inserted "Something hard that hurt very badly. He placed me on the table. He packed me with gauze. The gauze came out later," and that her husband paid the defendant for what he had done. There were also present a pathologist, an interne in the hospital, and two police officers, one of whom asked the defendant at the close of Mrs. Sylvia's account "if he knew Mrs. Sylvia." The accused said "Yes." He was then asked: "Have you anything to say?" The defendant answered, "Not at all. I have nothing to say." The Commonwealth introduced evidence that two police officers went to the defendant's office December 26, and asked him if he would accompany them to the hospital as a matter of identification. The defendant replied that he would, and one officer was voluntarily driven by the defendant in his own car to the hospital, the other officer and a stenographer who was with them going in the police department machine, and the interview with Mrs. Sylvia previously described followed. The defendant returned to his office, no warrant for his arrest having issued, and it was not until December 27, after Mrs. Sylvia's death, that the defendant was arrested.

It is manifest on this evidence that at the time the defendant was at the hospital he had not been taken into custody; whether the conduct of the defendant after he heard Mrs. Sylvia's charges amounted to an admission of their truth was a question for the jury. The first assignment of error that the conversation between Mrs. Sylvia and the officers was inadmissible cannot be sustained. *Warner* v. *Fuller*, 245 Mass. 520, 528.

The second assignment of error is the refusal of the judge

to strike out the evidence because in the cross-examination of the policeman who testified to the circumstances of the defendant's attendance at the hospital he said in substance that he did not intend that the defendant should escape and that he kept in touch with the defendant's movements. It is contended that, being under arrest, the defendant's conduct cannot be treated as evidence against him. *Commonwealth* v. *Spiropoulos*, 208 Mass. 71, 74. The motion was denied rightly. The defendant's freedom of movement was not interfered with and he returned to his own office after the interview. There was nothing elicited in cross-examination which tended positively to control or modify the evidence of the witness that the defendant had not been taken in custody.

If, however, the defendant deemed the entire evidence equivocal, the question was for the jury under appropriate instructions. It could not be raised by a motion to strike out. *Commonwealth* v. *Gangi*, 243 Mass. 341, 344.

The defendant offered to show that when Mrs. Sylvia came to his office she told him of her condition and symptoms connected with it. But the trial judge excluded the statements. The exclusion was right and the third assignment of error fails, for reasons given in *Commonwealth* v. *Sinclair*, 195 Mass. 100, 108. It is unnecessary to consider G. L. c. 233, § 65, since the evidence was incompetent on its merits.

We discover no reversible error for the reasons stated and the entry must be

*Judgment affirmed.*