### STATE v. R. J. C. BROWN.[1]

March 7, 1941.

No. 32,589.

¹Reported in 296 N. W. 582.

*A. M. Cary, Lena O. Smith,* and *Mark J. McCabe,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *William G. Compton,* First Assistant County Attorney, for the State.

PETERSON, JUSTICE.

Defendant was convicted of the crime of manslaughter in the first degree committed by performing an abortion upon a girl from which she died. He appeals from the judgment of conviction and from an order denying his motion for new trial.

The only assignments of error relate to the admissibility of certain declarations of the girl.

The girl was admitted to the General Hospital in Minneapolis on August 10, 1939. She was then critically ill from an abortion which had been recently performed on her. Her father came to see her on the 12th. He sent for a priest, who administered to the girl the last rites of the Roman Catholic Church.

Declarations of the girl made on August 14, 16, and 22 were received in evidence. All were taken at the hospital. The first was taken on the 14th by a policewoman aided by a stenographer. After the notes had been transcribed the policewoman took the typewritten statement to the girl and read it to her. The girl signed it with a cross. It was not shown that she had stated or had been told that death was imminent when she made the statement, which was taken down in shorthand, or when she signed it in typewritten form.

The next statement was taken early in the morning of August 16. The girl was then in a very critical condition. The attending physician told her that she was about to die. He testified that she made no response to that statement; that she answered all ques-

tions coherently and that the policewoman had taken notes of what transpired. Another doctor also testified that he heard the doctor tell her that she was going to die and that she made no direct response. The policewoman testified with the aid of her notes that the doctor asked the girl if she realized that she was "very seriously ill" and if she knew that she was "going to die" and that she answered "yes" to both questions. The girl then stated that on July 31 the defendant performed an abortion on her for which she paid him $25; that she remembered her statement of the 14th; that it was true in all particulars except the one that she did not know who caused her pregnancy; that the fact with respect to that matter was that one Schmidt was the guilty party; and that he arranged to have the abortion performed and gave her the money with which to pay for it.

Another declaration was made at about 11 o'clock in the forenoon under the following circumstances. The policewoman and a police officer went to defendant's office with a "forthwith subpoena" issued by the county attorney commanding defendant to appear forthwith at the latter's office. Defendant went with them without objection. The three then went to the girl's bedside in the hospital. The girl stated that the defendant was the man who performed the abortion, and she repeated the substance of the previous statement in his presence. Defendant leaned forward and asked the policewoman, "What is this all about?" She replied, "Well, you must understand that we were questioning her about an abortion that you performed." To this defendant made no reply. After they left the room and were in the hall, defendant asked the police officer, "What is this all about?"

The defendant was taken to the county attorney's office, where he was asked what he knew about the case. He replied that he did not remember the girl having been in his office. The evidence is that he was then placed under arrest.

The last declaration was made on the 22nd. The attending physician was then of the opinion that she would die in from 24 to 48 hours. She had been placed in an oxygen tent because of

difficulty in breathing. The doctor told her that she was going to die. She replied, "I am going to die sometime." Several times she repeated that she would not tell a lie. The doctor told her again that she was about to die, but she made no response to that statement. She again declared that defendant had performed the abortion on her and stated the circumstances thereof.

Defendant conveniently groups the statements into two classes. He contends that the statement of the girl in his presence and the other occurrences at the hospital during the morning of August 16 relate to admissions by conduct consisting of a justified silence on his part because he was then under arrest and that, since the statements were not addressed to him, there was no occasion for his answering them. The other statements were received as dying declarations, which defendant contends was error because they were made without the requisite foundation that the girl spoke in the belief that death was impending and that there was no hope of recovery.

The claim is that there was no evidence of any kind that the statements on the 14th were made in the belief of impending death and that hope of recovery was gone.

The contention that the statement made early in the morning of the 16th was without sufficient foundation is based upon the testimony of the doctors, one of whom testified that she did not respond when he told her that she was about to die, and the other that he did not recall her answering him directly. Their testimony is said clearly to outweigh the policewoman's testimony that the girl responded "yes" when the doctor told her that she was about to die. Both the policewoman and the doctor testified that the former made notes at the time.

The statement of the 22nd is objected to because the girl stated in response to the doctor when he told her that she was going to die, "I am going to die sometime," which it is contended shows that she did not then believe that death was imminent.

■ Silence under accusation permits an inference that the accused acquiesced in the statement and admitted its truth. State

v. Graham, 176 Minn. 164, 222 N. W. 909; State v. Kerr, 162 Minn. 309, 202 N. W. 727; State v. Findling, 123 Minn. 413, 144 N. W. 142, 49 L.R.A.(N.S.) 449 (identification of accused by the victim of the crime); State v. Quirk, 101 Minn. 334, 112 N. W. 409; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3420.

Defendant contends that the rule is inapplicable here for the reasons that he was under arrest at the time the statements were made and that the statements at the hospital called for no response from him since they were not addressed to him. There is high authority for the proposition that the mere fact of arrest renders inadmissible a defendant's silence in the face of accusatory statements made in his presence and hearing. The arrest is deemed to place such restraint on the accused as to destroy the basis for an inference of acquiescence by silence or failure to controvert. Annotation, 80 A. L. R. 1262.

Likewise, there is respectable authority for the proposition that the defendant's silence is not acquiescence where the statements are not addressed to and hence do not call for an answer from him. 2 Wharton, Criminal Evidence (11 ed.) § 660. This like the preceding one is an open question in this state.

This case does not come within either rule invoked by the defendant. He was not under arrest when the statements in question were made. The evidence is that he was not placed under arrest until after he was questioned at the county attorney's office. The court below gave him the benefit of the rule that a failure to deny an accusation is not to be deemed an acquiescence therein by a defendant who is under arrest by instructing the jury that the statement was not to be considered if defendant was under arrest when the statement was made. Implicit in the verdict of guilty is the proposition that if the jury considered the statement it found that defendant was not under arrest when it was made, or that it did not consider the statement if he was then under arrest. The Massachusetts court, which follows the rule invoked by defendant in the similar case of Commonwealth v. Morris, 264 Mass. 314, 162 N. E. 362, 363, held that the defendant was not

under arrest within the rule where he went with two police officers at their request to a hospital where the victim of the abortion lay, for purposes of identification, and that the statement of the victim that the defendant performed the abortion and his answer to an inquiry after the identification whether he had anything to say, "Not at all. I have nothing to say," were admissible to show an admission.

This is not a case where the accusatory statements did not call for an answer from the defendant. Defendant did not remain silent. His asking the policewoman the question what the statement was about provoked the response accusing him of having performed the abortion and telling him that the statement which was being taken related to that matter. Having brought up the subject, he might have been expected to deny or explain. His silence under the circumstances permitted an inference of acquiescence in the truth of the statement and accusation, and, when considered with his inquiry of the police officer in the hall and his answers at the county attorney's office, of evasive and suspicious conduct suggestive of guilt.

One who speaks is not entitled to the benefit of a rule which is for those who remain silent. Commonwealth v. Spiropoulos, 208 Mass. 71, 91 N. E. 451. Defendant's silence in the face of the accusation which he provoked by asking a question and his evasive conduct under the circumstances were admissible as admissions. People v. O'Donnell, 315 Ill. 568, 146 N. E. 490; Commonwealth v. Helfman, 258 Mass. 410, 155 N. E. 448; Annotation, 80 A. L. R. 1249-1250. In Commonwealth v. Hamel, 264 Mass. 564, 163 N. E. 168, 170, the facts were quite similar to the instant case. There the victim stated that the defendant performed an abortion on her of which she later died. When questioned, defendant gave evasive answers as to whether she knew the girl and stated concerning the statement that the "girl was out of her head, she did not know what she was talking about." The court held that defendant's answers and the declarations of the girl were admissible, whether defendant was under arrest at the time or not. Defendant's an-

swer to the county attorney's question in the instant case what he knew about the case that he did not remember the girl's being at his office was an evasion of the inquiry. The fact is that he talked on his own initiative when he was not questioned as well as when he was. He was in no position to invoke a rule which applies only where the defendant remains wholly silent.

The defendant's silence in the face of the answers to his own inquiry telling him that the statement related to his having performed the abortion and accusing him of the fact, together with the statement and all the surrounding facts, were admissible to show apparent acquiescence in the truth of the statement and accusation.

■ The dying declarations of the victim of a homicide, including a case where death results from an illegal abortion, concerning the facts and circumstances of the infliction of the fatal injury are admissible upon the trial of the person charged with having committed the homicide, where it appears that the declarations were made when the victim was about to die and that she believed at the time of making them that death was imminent and there was no hope of recovery. State v. Mueller, 122 Minn. 91, 141 N. W. 1113. The fact that the declarant was about to die and believed that death was imminent and there was no hope of recovery is essential as a predicate for the admission of such declarations.

The existence of the necessary predicate must be clearly shown and not left to conjecture to render a dying declaration admissible. There can be no serious question on this record that the girl was mortally sick when she made all the declarations. The only question concerns her belief in the imminence of death and despair of recovery. The state of mind of the declarant is susceptible of proof like any other fact. No particular kind of proof is required. There is no set formula by which to determine its sufficiency. The existence of the state of mind may be shown by the declarations of the declarant, which are generally regarded as the most satisfactory evidence of the fact, or by circumstantial evidence where

the facts shown support such an inference in the required degree. State v. Elias, 205 Minn. 156, 285 N. W. 475.

The dying declarations were not inadmissible because there was conflicting evidence as to the existence of a proper predicate upon which their admissibility depended. The conflict was no bar to admissibility; it merely invoked a decision of the question which it raised. Where admissibility depends on a factual predicate, the existence of the facts constituting the predicate must be determined in passing on admissibility. A conflict in the evidence as to the existence of such facts simply necessitates a determination of the facts by resolving the conflict one way or the other. In the first instance, the court below determined upon conflicting evidence the existence of the necessary predicate for the admission of the dying declarations. Then it submitted the question of the existence of the predicate to the jury with an instruction to consider the declarations if the predicate was established, otherwise to disregard them. No error is assigned with respect to the procedure. The only question here is whether or not the evidence supports a finding that the necessary foundation for the admission of the dying declarations was established.

It is undisputed that on the morning of August 16, when the girl was mortally sick, one of the doctors told her that she was about to die. Against admissibility, defendant urges the testimony of the two doctors that the girl made no response when she was told that she was about to die. But that was not all there was to the evidence of predicate. In support of admissibility, the state showed that the last rites of the church had been administered to the declarant four days before. The policewoman testified that the girl said "yes" when she was told that she was going to die. The policewoman made notes at the time the statement was taken which showed that an affirmative response was made. She used these notes to refresh her memory while testifying. Here, then, we have a situation where the finding of the necessary foundation is supported by direct and by circumstantial evidence. There was evidence that declarant stated that she knew at the time she made

the statement that she was about to die. That alone satisfied the requirements of admissibility. An inference that she believed death was imminent was permissible from the facts that she was then mortally sick; that the doctor had told her that she was about to die, State v. Phillips, 118 Iowa, 660, 92 N. W. 876; 26 Am. Jur., Homicide, § 419; and that she had recently received the last rites of her church, State v. Cantieny, 34 Minn. 1, 24 N. W. 458; Carver v. United States, 164 U. S. 694, 17 S. Ct. 228, 41 L. ed. 602; People v. Buettner, 233 Ill. 272, 84 N. E. 218, 13 Ann. Cas. 235. The evidence amply sustains the finding of the existence of the necessary predicate for the admissibility of the statement of August 16 as a dying declaration.

There was no showing that the girl had been informed on August 14 that she was about to die or that she had stated that she believed that death was imminent and had given up all hope of recovery. No claim is made that the necessary foundation was established by evidence that she had received extreme unction two days before. The written statement of the 14th was offered and received as part of the dying declaration of the 16th. A statement, either oral or written, which lacked the necessary foundation for admissibility at the time it was made is admissible where it is subsequently reaffirmed or reiterated as part of a dying declaration having the necessary predicate and which itself is admissible. The foundation for receiving the dying declaration imparts admissibility to all statements which are part of it. Cooper v. State, 182 Ga. 42, 184 S. E. 716, 104 A. L. R. 1309; Annotation, 104 A. L. R. 1319. Contra, People v. Cheney, 368 Ill. 131, 13 N. E. (2d) 171, 114 A. L. R. 1514.

We believe that the weight of authority and reason supports the view that the statement was admissible under the circumstances stated. State v. Cantieny, 34 Minn. 1, 24 N. W. 458, tends to support that view.

There was no error in receiving the statement of August 14 as part of the statement made early in the morning of the 16th and showing the circumstances under which it was made.

We regard the admissibility of the declaration of the 22nd as the most troublesome question in the case. It was taken ten days after the girl had received extreme unction and six days after she declared that she knew that she was about to die. When the doctor told her that she was going to die, the girl replied, "I am going to die sometime." The court below said that if that was all there was to the statement he would not have received it. Her declaration raises the troublesome question whether she then spoke with some lingering hope of recovery; whether she believed that death was really imminent. A belief in the mind of the declarant at the time of making the declaration that death is near is indispensable. Any hope of recovery, however slight, renders the declaration inadmissible. State v. Elias, 205 Minn. 156, 285 N. W. 475; Shepard v. United States, 290 U. S. 96, 54 S. Ct. 22, 78 L. ed. 196. Words are to be construed in the light of their setting. The words aside, the evidence supported a finding of declarant's belief that death was imminent and that she had despaired of recovery. In addition to the evidence showing that her sickness was fatal; that the last rites of the church had been administered to her; that the doctors had told her that she was about to die; and that she had stated that she knew that she was going to die, there was the further evidence that her condition changed for the worse; that death was a matter of but 24 to 48 hours; that she was placed in an oxygen tent; and that the doctor told her twice again that she was about to die. It is barely possible that hope of recovery might have revived. But the circumstances strongly repel it in view of the fact that imminent death was so strongly emphasized by the doctors. The words "some time" when used as separate words mean some indefinite time or period, as "it happened some time ago." When used as one word, "sometime" means at some time not definitely known, as "sometime during the night." Webster's New International Dictionary (2 ed.) 1934. In that sense the words did not negative the belief that death was near. The view was permissible that she believed that death, which she was told and which she knew was about to occur, was inevitable any-

way. The evidence supports the finding that there was sufficient foundation for the admissibility of the declaration.

The fact that the declarant lingered for several days after her declaration of the 16th and a day after her declaration of the 22nd does not render the declarations inadmissible. It is the belief of impending death at the time the declaration is made which renders it admissible. 26 Am. Jur., Homicide, § 408.

Affirmed.