STATE of Minnesota, Respondent,

v.

Jose Miguel CHAVARRIA–CRUZ, Appellant.

No. A08–1036.

Court of Appeals of Minnesota.

Sept. 8, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Melissa V. Sheridan, Assistant Public Defender, Eagan, MN, for appellant.

Considered and decided by JOHNSON, Presiding Judge; PETERSON, Judge; and CONNOLLY, Judge.

## OPINION

PETERSON, Judge.

Appellant challenges the denial of his motion to suppress statements that he made to police, arguing that he made the statements after he requested to speak with an attorney and his request was not honored. Appellant also challenges his conviction of second-degree murder committed for the benefit of a gang, arguing that the state failed to establish that his group met the statutory definition of a "criminal gang." We affirm.

## FACTS

The victim was shot while standing in the driveway of his home in Bloomington. When the police arrived, the victim was pronounced dead. Detective Edward Hanson was assigned as lead investigator on the homicide. In the course of his investigation, he learned that a member of the Surenos 13 gang known as "Joker" might have been involved with the shooting. Because the victim was associated with the Vatos Locos gang, which was "basically at war with" Surenos 13, Hanson's investigation broadened to include all of Surenos 13. Appellant Jose Chavarria–Cruz, whose street name is "Wizard," is a member of Surenos 13.

Before interviewing appellant, who was then in custody, Hanson informed him of his *Miranda* rights. Approximately 30 minutes into the interview, the following exchange occurred:

HANSON: You know where I'm coming from on [the conflicting stories from the various suspects], don't you? I'm telling you that, that cooperation and honesty gets you farther than anything else in this. Cooperation, honesty, and remorse. I know if something happened like that, you wouldn't, what would your mom be like? You know, to come outside and see you lying out in the driveway? You know, take all the other stuff out of it. What would your mom do? You know what I'm saying? Your brothers know that, your brothers know it was a part of their life. But I just don't think that these other people, I think that they're trying to hang somebody. I think that they're trying to paint somebody as a cold-blooded killer that is not a cold-blooded killer.

APPELLANT: You talking about me?

HANSON: Talking about you buddy.

APPELLANT: I guess I'll go to court then.

HANSON: Pardon?

APPELLANT: I guess I'll go to court.

HANSON: You don't want to cooperate with us?

APPELLANT: That's not ... I'm, I'm cooperating here, talking to you has been like you know, I think I need a lawyer ...

HANSON: Don't you understand though? Wizard! These guys are putting the gun in your hand.

APPELLANT: Gun in my hand?

HANSON: Yes.

APPELLANT: Oh.

Appellant was interviewed again about one month later. During this interview, appellant admitted to shooting his gun but stated that he did not intend to kill anybody.

Appellant and four codefendants were indicted on charges of first-degree premeditated murder in violation of Minn. Stat. § 609.185(a)(1) (Supp.2005) and first-degree murder for the benefit of a gang in violation of Minn.Stat. §§ 609.185(a)(1) (Supp.2005), .229, subd. 2 (2004). Appellant moved to suppress statements made after he requested a lawyer, and the district court denied his motion because it was persuaded by Hanson's testimony that he did not hear appellant's request when it was made. Following a jury trial, appellant was acquitted of the first-degree murder charges but convicted of the lesser included offenses of second-degree intentional murder in violation of Minn.Stat. § 609.19, subd. 1(1) (2004); second-degree intentional murder for the benefit of a gang in violation of Minn.Stat. §§ 609.19, subd. 1(1), .229 subd. 2j second-degree unintentional murder in violation of Minn. Stat. § 609.19, subd. 2(1) (2004), and second-degree unintentional murder for the benefit of a gang in violation of Minn.Stat. §§ 609.19, subd. 2(1), .229 subd. 2. He was sentenced on the conviction of second-degree intentional murder for the benefit of a gang. This appeal followed.

## ISSUES

I. Was appellant's request to speak with an attorney during the custodial interrogation sufficient to invoke appellant's right to counsel?

II. Was the evidence sufficient to establish that Surenos 13 met the statutory definition of "criminal gang"?

## ANALYSIS

### I.

██ Appellant challenges the denial of his motion to suppress statements that

he made while in custody, arguing that the police continued to interrogate him after he requested counsel. "The state bears the burden of demonstrating that any claimed waiver of *Miranda* rights was knowing, voluntary and intelligent." *State v. Ray*, 659 N.W.2d 736, 742 (Minn.2003). We review the district court's findings of fact for clear error, but we conduct a de novo review of the district court's legal conclusions based on those findings. *Id.*

■■■ An accused who has "expressed his desire to deal with the police only through counsel[ ] is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). But a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994).

The United States Supreme Court has declined to adopt a rule that requires officers to ask clarifying questions when a suspect makes an ambiguous or equivocal statement. *Id.* at 461–62, 114 S.Ct. at 2356. But the Minnesota Supreme Court has held "that when a suspect indicates by an equivocal or ambiguous statement, which is subject to a construction that the accused is requesting counsel, all further questioning must stop except that narrow questions designed to 'clarify' the accused's true desires respecting counsel may continue." *State v. Robinson*, 427 N.W.2d 217, 223 (Minn.1988).

■■■ Appellant argues that his statement "I think I need a lawyer" was an unequivocal request for counsel that required interrogation to cease. Alternatively, he argues that it was an equivocal request for counsel that required further clarification before the interrogation could proceed. But because the district court admitted appellant's statements based on its finding that Hanson did not hear appellant's request when it was made, the issue presented in this case is not whether appellant's request for counsel was equivocal or unequivocal, but whether a statement that is inaudible to the interrogating officer invokes the right to counsel. We conclude that a suspect whose request for counsel is spoken so softly that the interrogating officer is not aware that the suspect has requested counsel has not invoked the right to counsel and remains subject to further interrogation.

Our conclusion is based on the Supreme Court's explanation in *Davis* that

> [t]he applicability of the rigid prophylactic rule of *Edwards* requires courts to determine whether the accused *actually invoked* his right to counsel. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.

*Davis*, 512 U.S. at 458–59, 114 S.Ct. at 2355 (citation and quotations omitted). A statement that is inaudible to an interrogating officer cannot reasonably be construed by the officer to be an invocation of the right to counsel because a statement that is inaudible presents nothing for the officer to construe. An officer who does not hear a request cannot reasonably be expected to cease questioning or to ask

888

narrow questions designed to clarify the request.

■ Whether an officer heard a suspect's request is a question of fact, which we review for clear error. In this case, Hanson testified that appellant was difficult to understand because he was "[v]ery soft spoken," often looked down when he was talking, and had a pronounced accent. Hanson also testified that the first time that he became aware that appellant had used the word "lawyer" during the interview was shortly before the suppression-motion hearing when it was pointed out to him in the transcript, and he was surprised that appellant had used the word. Hanson further testified that, despite reviewing the audio recording multiple times, he still was not able to understand exactly what appellant said beyond using the word "lawyer." Finally, Hanson testified that he "would have stopped talking to [appellant] had he invoked his right to counsel." The district court found this testimony credible.

Appellant argues that the district court's finding is clearly erroneous because appellant's request was sufficiently clear to be included in the transcript and can be heard in the audio recording of the interview. But a review of the audio recording supports Hanson's testimony that appellant's request is, at best, difficult to hear, even when the listener knows what to listen for and is following along with the transcript. The entire request sentence lasted just one second, and the word "lawyer" is not clearly articulated. Thus, the district court's finding that Hanson did not hear the request is not clearly erroneous, and the district court did not err by admitting statements that appellant made after he made the request.

1. Aggravated robbery and simple robbery are among the offenses listed in Minn.Stat.

## II.

■ Appellant argues that the evidence was insufficient to establish that Surenos 13 met the statutory definition of "criminal gang" under Minn.Stat. § 609.229, subd. 1 (2004). When reviewing a challenge to the sufficiency of the evidence, we conduct a painstaking analysis of the record to determine whether the fact-finder could reasonably find the defendant guilty of the offenses charged based on the facts in the record and the legitimate inferences that can be drawn from them. *State v. Fleck*, 763 N.W.2d 39, 41 (Minn.App.2009). We view the evidence in the light most favorable to the verdict and assume that the fact-finder believed the evidence supporting the verdict and did not believe any contrary evidence. *Id.* We will not disturb a guilty verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, reasonably could conclude that the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn. 1988).

■ The legislature has defined "criminal gang" as

any ongoing organization, association, or group of three or more persons, whether formal or informal, that:

(1) has, as one of its primary activities, the commission of one or more of the offenses listed in section 609.11, subdivision 9;[1]

(2) has a common name or common identifying sign or symbol; and

(3) includes members who individually or collectively engage in or have engaged in a pattern of criminal activity.

§ 609.11, subd. 9 (2009).

Minn.Stat. § 609.229, subd. 1. Whether a group constitutes a "criminal gang" is a question of fact. *See State v. Carillo,* 623 N.W.2d 922, 928 (Minn.App.2001) (rejecting argument that whether group constitutes a criminal gang is either a question of law or a mixed question of law and fact and holding that expert testimony on issue is admissible for the "factual perspective" it offers jurors unfamiliar with gangs), *review denied* (Minn. June 19, 2001).

Appellant argues that the state failed to prove either that one of Surenos 13's "primary activities" is committing crimes or that it includes members who engage in a "pattern of criminal activity." In support of this argument, appellant cites the following exchange with one of his codefendants:

> PROSECUTOR: ... [W]hat kind of crimes are committed, individually or together by Surenos?
>
> CODEFENDANT: What do you mean by that?
>
> PROSECUTOR: What kinds of crimes do you commit, the members of your gang, either together or individually?
>
> . . . .
>
> CODEFENDANT: What kind of crimes. I mean, couldn't really say that. I mean, like—what you mean or like what's your point, because, I mean, we're not in a gang just to commit crimes. It's about brotherhood, protecting one another.
>
> PROSECUTOR: Okay. And in that brotherhood, what kind of crimes are committed, either individually or together by you?
>
> CODEFENDANT: I mean, I can't speak for the—for another person. I mean, like, you're telling me to say in

general, and I can't really say it, because I'll be speaking for everyone, each individual and—

> PROSECUTOR: I'm just asking you to speak based on your knowledge though. Not anything else. Just based on your knowledge. What kinds of crimes?
>
> . . . .
>
> CODEFENDANT: Robberies.
>
> PROSECUTOR: Okay. Anything else?
>
> CODEFENDANT: Not that I know of.
>
> PROSECUTOR: So would you say that one of the group's primary activities is robberies?
>
> CODEFENDANT: Yeah.

Appellant argues that the codefendant's testimony did not establish that committing crimes was one of Surenos 13's primary activities because the codefendant testified that the group was primarily about brotherhood, not committing robberies. But the definition of criminal gang does not require the commission of crimes to be the primary activity of a group; it is only necessary that one of the group's primary activities is the commission of crimes. Minn.Stat. § 609.229, subd. 1(1). The codefendant specifically testified that one of the group's primary activities is committing robberies.

It is also reasonable to infer from the codefendant's testimony that Surenos 13 "includes members who individually or collectively engage in or have engaged in a pattern of criminal activity" as required under Minn.Stat. § 609.229, subd. 1(3). "Pattern" means "[a] mode of behavior or series of acts that are recognizably consistent." *Black's Law Dictionary* 1149 (9th ed. 2009). When asked about the kinds of crimes committed either individually or together by members of the brotherhood,

the codefendant responded, "Robberies." In order for the codefendant to testify that members of the brotherhood had committed robberies, the group had to have included members who individually or collectively engaged in multiple acts that the codefendant recognized as robberies. Multiple acts that are recognized as robberies constitute a pattern of criminal activity.

## DECISION

The district court did not clearly err when it found that the interrogating officer did not hear appellant's soft-spoken request for counsel. Because an inaudible request is not sufficient to invoke the right to counsel, the district court did not err by admitting statements that appellant made after he requested an attorney. The evidence is sufficient to establish that appellant's organization met the statutory definition of "criminal gang."

**Affirmed.**