STATE of Minnesota, Respondent,

v.

José Miguel CHAVARRIA–
CRUZ, Appellant.

No. A08–1036.

Supreme Court of Minnesota.

June 30, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant Hennepin County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, St. Paul, MN; and Melissa Sheridan, Assistant State Public Defender, Eagan, MN, for appellant.

## OPINION

MAGNUSON, Chief Justice.

José Miguel Chavarria–Cruz was convicted of second-degree intentional murder for the benefit of a gang. Chavarria–Cruz confessed to the crime during a custodial interrogation. At his trial, he argued that

the confession was obtained in violation of his right to have an attorney present during questioning and moved to have the confession excluded from evidence. The district court denied the motion and admitted the confession, crediting the interrogating officer's testimony that he did not recall hearing Chavarria–Cruz's attempt to invoke his right to counsel. The court of appeals affirmed Chavarria–Cruz's conviction, and we granted his petition for further review. We reverse.

Before 1:00 a.m. on May 1, 2006, Carlos Hernandez Perez (Hernandez) died in the driveway of his Bloomington, Minnesota, home after sustaining four gunshot wounds. Hernandez was either a member or an associate of the Vatos Locos gang, which was engaged in an ongoing conflict with the Sureños 13 gang. The investigation of Hernandez's murder led police to suspect a group of five Sureños 13 members, including appellant, José Miguel Chavarria–Cruz, who was 16 years old at the time of Hernandez's murder.

On October 19, 2006, Chavarria–Cruz gave a statement to police in which he stated that he and his fellow Sureños 13 members went to Hernandez's house and stole drugs and shoes from Hernandez. After a struggle, Hernandez ran away and Chavarria–Cruz admitted shooting at Hernandez as he ran. Chavarria–Cruz said that he did not intend to kill Hernandez, and that he did not find out until the following day that the shots had hit and killed Hernandez.

The State charged Chavarria–Cruz by indictment in Hennepin County District Court with first-degree premeditated murder, under Minn.Stat. § 609.185(a)(1) (2008), and first-degree premeditated murder for the benefit of a gang, under the same statute together with Minn.Stat. § 609.229, subd. 2 (2008). Chavarria–Cruz pleaded not guilty, and he was tried before a jury.

At trial, the district court admitted Chavarria–Cruz's October 19 confession into evidence. The State presented extensive other testimony establishing generally that a group of five Sureños 13 gang members, including Chavarria–Cruz, went to Hernandez's house on the night of the murder, and at least one of the gang members committed the murder. That evidence included testimony from Hernandez's girlfriend, who heard the events of the murder over the telephone. She testified that she heard Hernandez and someone else struggling over a gun, she heard someone tell Hernandez that it was his night to die, and she heard a sound like something falling to the ground. Hernandez then told his girlfriend to call the police, but thereafter stopped responding to her questions.

Other than Chavarria–Cruz's confession, the only evidence at trial implicating him as the shooter came from Felipe Saldivar Alvillar (Saldivar). Saldivar testified pursuant to a plea agreement with the State.[1] He said that he was with Chavarria–Cruz and three other men on the night of April 30 and past midnight into May 1. The group targeted Hernandez because of his affiliation with the Vatos Locos gang. Saldivar stated that Chavarria–Cruz and one other man, both carrying guns, got out of the car at Hernandez's home. Saldivar remained in the car, but heard gunshots. Chavarria–Cruz and the other man then ran back to the car, carrying a pair of shoes. Saldivar testified that he heard Chavarria–Cruz admit to shooting his gun, while the other man stated that the clip on

---

**1.** Saldivar's agreement allowed him to plead guilty to conspiracy to commit first-degree premeditated murder for the benefit of a gang and receive a sentence of 18 years, in exchange for the State's agreement to dismiss first-degree murder charges against him.

his gun had fallen out. Relying on the consistent accounts of the night's events from Chavarria–Cruz's confession and Saldivar's testimony, together with police testimony that the six cartridges found at the scene likely came from only one weapon, the State argued that only one shooter performed the killing and that Chavarria–Cruz was the shooter. Chavarria–Cruz did not testify or present any direct evidence.

The jury acquitted Chavarria–Cruz of the first-degree murder charges, but found him guilty of the lesser-included offenses of second-degree intentional murder for the benefit of a gang under Minn.Stat. §§ 609.19, subd. 1(1) (2008), 609.229, subd. 2, second-degree intentional murder under Minn.Stat. §§ 609.19, subd. 1(1), second-degree unintentional murder for the benefit of a gang under Minn.Stat. § 609.19, subd. 2(1) (2008), 609.229, subd. 2, and second-degree unintentional murder under Minn.Stat. § 609.19, subd. 2(1). The court convicted Chavarria–Cruz of second-degree intentional murder for the benefit of a gang, and sentenced him to 350 months in prison.

Before trial, Chavarria–Cruz moved to have his confession suppressed on the ground that it was obtained in violation of his constitutional right to have counsel present during an interrogation. Chavarria–Cruz argued that he invoked that right by requesting an attorney during a September 13, 2006, interrogation and that the police failed to honor Chavarria–Cruz's rights by ceasing to interrogate him from that point until an attorney was present.

The September 13 interrogation was conducted by the lead investigator on the case, Detective Edward Hanson. After a few introductory questions, Hanson informed Chavarria–Cruz of his constitutional rights. Hanson then proceeded to question Chavarria–Cruz, who denied any involvement in the crime. After about 30 minutes, Chavarria–Cruz made the statement that he later argued invoked his right to have counsel present during any further questioning. The State's written transcript represents the exchange as follows:

> Hanson: You know where I'm coming from on that, don't you? I'm telling you that, that cooperation and honesty gets you farther than anything else in this. Cooperation, honesty and remorse. I know if something happened like that, you wouldn't, what would your mom be like? You know, to come outside and see you lying out in the driveway? You know, take all the other stuff out of it. What would your mom do? You know what I'm saying? Your brothers know that, your brothers know it was part of their life. But I just don't think that these other people, I think that they're trying to hang somebody. I think they're trying to paint somebody as a cold blooded killer that is not a cold blooded killer.
>
> Chavarria–Cruz: You talking about me?
>
> Hanson: Talking about you buddy.
>
> Chavarria–Cruz: I guess I'll go to court then.
>
> Hanson: Pardon?
>
> Chavarria–Cruz: I guess I'll go to court.
>
> Hanson: You don't want to cooperate with us?
>
> Chavarria–Cruz: That's not ... I'm, I'm cooperating here, talking to you has been like you know, I think I need lawyer ...
>
> Hanson: Don't you understand though? Wizard![2] These guys are putting the gun in your hand.

---

**2.** Wizard is Chavarria–Cruz's nickname.

Chavarria–Cruz: Gun in my hand?

Hanson: Yes.

Chavarria–Cruz: Oh.

A review of the tape recording reveals that Chavarria–Cruz actually said something closer to, "I'm cooperating here, if I could just be like, you know, get me a lawyer."

The interview continued for approximately 20 minutes longer, and Chavarria–Cruz continued to deny any involvement in Hernandez's killing. No lawyer was provided for Chavarria–Cruz, who remained in custody following the September 13 interrogation. Hanson questioned Chavarria–Cruz again on October 19, and, during this interview, Chavarria–Cruz confessed that he shot Hernandez.

At a hearing on Chavarria–Cruz's motion to suppress the confession, Hanson described his memory of the September 13 interrogation. He stated that he and Chavarria–Cruz were seated "almost kiddie corner" from each other at opposite ends of the table. Chavarria–Cruz did not face Hanson directly most of the time, and looked away or down for much of the interview. Hanson further stated that Chavarria–Cruz was "very soft spoken," and had a "pronounced" accent. Hanson testified that he did not recall Chavarria–Cruz using the word "lawyer" during the course of the interview. Upon review of the tape recording, however, Hanson conceded that there was "no doubt" that Chavarria–Cruz mentioned a lawyer, although the words preceding "lawyer" are difficult to discern.

The district court denied Chavarria–Cruz's motion to suppress the confession.

The court of appeals affirmed Chavarria–Cruz's conviction, *State v. Chavarria–Cruz*, 771 N.W.2d 883, 885 (Minn.App. 2009), and Chavarria–Cruz then filed a petition for further review in this court. We granted his petition to address the question of whether the district court erred when it denied Chavarria–Cruz's motion to suppress the statements he made after requesting an attorney.

I.

Both the Fifth Amendment to the United States Constitution and Article I, Section 7 of the Minnesota Constitution provide that "No person shall ... be compelled in any criminal case to be a witness against himself...." The United States Supreme Court has held that the right to have counsel present during an interrogation while the suspect is in police custody is an indispensable prophylactic measure to protect the constitutional privilege against self-incrimination. *State v. Risk,* 598 N.W.2d 642, 647 (Minn.1999) (citing *Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). An officer questioning a suspect must therefore inform the suspect at the outset of questioning that he or she has the right to have an attorney present during the interrogation. Once the suspect invokes that right by "clearly assert[ing] his right to counsel," questioning must immediately cease until an attorney is present "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* (quoting *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)).[3] If question-

---

**3.** In *Maryland v. Shatzer,* 559 U.S. ——, 130 S.Ct. 1213, 1223, —— L.Ed.2d —— (2010), the United States Supreme Court recently held that a suspect who has invoked the right to counsel may be reapproached for questioning by police 14 days after being released from custody. Because Chavarria–Cruz was con- tinuously incarcerated between his September 13 interview and his October 19 confession, *Shatzer* is not implicated in this case. We therefore need not consider the question of whether the *Shatzer* 14-day limitation on the *Edwards* rule applies under Minnesota's Constitution.

ing continues after the suspect has invoked the right to have an attorney present, any "evidence obtained as a result of the interrogation is not admissible against the defendant at trial." *Id.* (citing *Miranda*, 384 U.S. at 479, 86 S.Ct. 1602).

 The sole issue in this case is whether Chavarria–Cruz invoked his right to counsel during the September 13 interview. Both parties agree that the question of whether a suspect has invoked the right to counsel is objective. A suspect "must articulate his desires to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 648, 86 S.Ct. 1602 (quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)); *accord State v. Munson*, 594 N.W.2d 128, 139 (Minn.1999). In Minnesota, suspects are afforded one further level of protection. Where a suspect's request is "equivocal or ambiguous" but "subject to a construction that the accused is requesting counsel, all further questioning must stop except that narrow questions designed to 'clarify' the accused's true desires respecting counsel may continue." *State v. Robinson*, 427 N.W.2d 217, 223 (Minn.1988) *quoted in Risk*, 598 N.W.2d at 647–48.

██ ██ We first consider the content of Chavarria–Cruz's statement, before considering the manner in which the statement was made, including its volume. Not every statement that references a lawyer amounts to even an ambiguous "request to terminate the interrogation until . . . counsel [is] present." *Risk*, 598 N.W.2d at 649. To trigger the requirement that the officer stop and ask narrow questions to determine whether Chavarria–Cruz was invoking his right to counsel, the content of Chavarria–Cruz's words must have been at least "subject to a construction that" he

was "requesting counsel." *Id.* (quoting *Robinson*, 427 N.W.2d at 223). Here, the State concedes that the words Chavarria–Cruz used were sufficient to at least raise the duty to inquire further under *Robinson*, 427 N.W.2d at 223, and *Risk*, 598 N.W.2d at 648–49. Therefore, this case turns on a reasonable officer's perception of the manner in which Chavarria–Cruz spoke his request for counsel, rather than on the content of his words.

The district court provided minimal reasoning to support its denial of Chavarria–Cruz's motion to suppress his confession. The court made its ruling orally, stating only, "Candidly, I don't think this was a model of how interrogations should occur, but looking at the totality of the circumstances, I'm convinced that they are constitutionally admissible, and so I'm going to deny the motions to suppress the confessions. Those statements will come in." At the end of Chavarria–Cruz's trial, the prosecutor sought more specific reasoning from the court, and the following exchange occurred:

> Prosecutor: Frankly, the biggest—the most important part to me if there is an appeal is the Court's credibility determination as to specifically the cop not hearing it basically. I think that's the one piece that I couldn't get from the cold record is the Court's credibility determination on that. And that's why I wanted to make a point to bring it up.
>
> Court: I was persuaded that it was difficult to hear what the defendant said on that one part, so I didn't suppress it.

The court of appeals characterized the district court's ruling as an application of a subjective test, stating that "the district court admitted appellant's statements based on its finding that Hanson did not hear [Chavarria–Cruz]'s request when it

was made." *Chavarria–Cruz*, 771 N.W.2d at 887. The court of appeals then framed the issue as "whether a statement that is inaudible to the interrogating officer invokes the right to counsel." *Id.* The court of appeals next recited the "objective inquiry" rule, but went on to hold that:

A statement that is inaudible to an interrogating officer cannot reasonably be construed by the officer to be an invocation of the right to counsel because a statement that is inaudible presents nothing for the officer to construe. An officer who does not hear a request cannot reasonably be expected to cease questioning or to ask narrow questions designed to clarify the request.

*Id.* at 887–88. The court of appeals then applied the clear-error standard of review to the pure factual question of whether Hanson heard Chavarria–Cruz's request in this case. *Id.* at 888. Deferring to the district court's credibility determination on that point, the court of appeals held that the factual finding that Hanson did not hear the request was not clearly erroneous. *Id.*

The district court and court of appeals approached the admissibility of Chavarria–Cruz's statements by asking a subjective question: Whether Detective Hanson in fact heard Chavarria–Cruz invoke his right to counsel. Hanson testified that he did not recall hearing the statement. The district court credited Hanson's testimony and admitted Chavarria–Cruz's subsequent confession on that basis. The court of appeals approved of the district court's subjective approach, essentially creating an exception to the objective, "reasonable officer" analysis for cases where the officer testifies that the suspect's statement was spoken too quietly to be heard.

We reject the court of appeals' approach, which improperly converts the objective test established by our court and the United States Supreme Court into a subjective test for cases where the question is whether a suspect's words were spoken loudly enough to be heard. We employ the "reasonable police officer" standard for determining whether a suspect has invoked the right to counsel because it "avoid[s] difficulties of proof" and "provide[s] guidance to officers conducting interrogations." *Davis*, 512 U.S. at 458, 114 S.Ct. 2350. In addition, the objective approach protects suspects' Fifth Amendment right against compelled self-incrimination without placing any special burden on law enforcement. Officers conducting investigations have a strong interest in facilitating effective communication in order to gather information. That interest includes ensuring that all of the suspect's words are clear and audible to the questioning officer, and paying careful attention to the suspect when he or she speaks.

These policies support the use of the objective standard in cases where an officer states that he or she did not hear the suspect, just as in cases where the disputed issue involves the meaning of the suspect's words. We therefore hold that the *Davis* objective test—whether a suspect has "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney"—applies to the manner of the suspect's statement. 512 U.S. at 459, 114 S.Ct. 2350.

## II.

■ The question answered by the court of appeals in this case—whether the district court erred in concluding that Officer Hanson did not hear Chavarria–Cruz's request for a lawyer—is not the dispositive question in this appeal because the objective test applies. We must instead ask whether, in light of all the circumstances, a

reasonable officer would have heard Chavarria–Cruz's request. This is the question the district court should have considered here.

■■■ In making this objective inquiry, courts should rely primarily on the recording of the interview where, as in this case, a recording is available as required by our decision in *State v. Scales,* 518 N.W.2d 587 (Minn.1994). That recording, together with any testimony of the suspect and the officer or officers who were present, provide the factual backdrop to consider the legal question of what a reasonable officer would have perceived. A "reasonable officer" is one with ordinary hearing abilities who has taken steps to ensure that clear communication can occur between the officer and the suspect. Further, the reasonable officer is attentive to the suspect's answers to questions.

■■■ At oral argument in this case, we gave considerable attention to the applicable standard of review. Before performing our analysis using the reasonable officer standard, we clarify the standard of review that applies to "fact-intensive, mixed questions of constitutional law" such as the one presented here. *Lilly v. Virginia,* 527 U.S. 116, 136, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). When a district court decides whether a suspect successfully invoked the right to counsel during a custodial interview, that determination involves intertwined questions of law and fact. The factual elements—including the suspect's precise words, the volume at which the words were spoken, the volume relative to the suspect's other words, the positions of participants and the recorder in the room, and the actions and impressions of the suspect and officer, among others—can be discerned from the recording, if one is available, and from the testimony of the people involved. We apply a clear-error standard of review to those underlying factual determinations. *State v. Ray,* 659 N.W.2d 736, 742 (Minn.2003); *Munson,* 594 N.W.2d at 139. The application of the reasonable officer legal standard to those facts receives de novo review. *Ray,* 659 N.W.2d at 742.[4] Other state supreme courts also describe this question as

---

**4.** Contrary to the concurrence's assertion, the standard of review that we apply in this case is consistent with our precedent. In *Ray,* we reviewed de novo the legal aspects of the very question we address here: whether a suspect communicated a request for an attorney "sufficiently clearly that a reasonable police officer, in the circumstances, would understand the statement to be a request for an attorney." *Ray,* 659 N.W.2d at 742 (quoting *Munson,* 594 N.W.2d at 139). In *Ray,* we addressed the content of the suspect's words. *Id.* Chavarria–Cruz's case admittedly involves a somewhat more fact-intensive inquiry, but the applicable test is the same and involves a mixed question of fact and law in both cases. The ultimate question to be answered is legal because it requires us to consider a legally created entity: the ordinary, objectively reasonable police officer.

The concurrence cites *State v. Hannon,* 636 N.W.2d 796, 804 (Minn.2001), *State v. Munson,* 594 N.W.2d 128, 139 (Minn.1999), and *State v. Miller,* 573 N.W.2d 661, 671 (Minn. 1998), for the proposition that the determination of "whether an accused invoked his right to counsel" is a factual question. In *Hannon,* we cited *Munson* for that proposition, and *Munson* in turn cited *Miller.*

We do not read the admittedly imprecise statements quoted by the concurrence as a change to our well-established approach to reviewing mixed questions of fact and law. Tracing this line of authority just one step further to Chief Justice Amdahl's opinion in *State v. Anderson,* 396 N.W.2d 564 (Minn. 1986) (cited in *Miller,* 573 N.W.2d at 671), sheds light on the matter. In *Anderson,* we explained the standard of review much more precisely: "[T]he trial court's duty is to resolve the testimonial disputes as to the historical facts, and the appellate court's duty is to independently determine, on the basis of all factual findings that are not clearly erroneous, whether or not the confession was voluntary." *Id.* at 565.

"mixed," and articulate the correct standard of review precisely as we have stated it here. *E.g., People v. Romero*, 953 P.2d 550, 555 (Colo.1998); *State v. Turner*, 305 S.W.3d 508, 514–15 (Tenn.2010); *State v. Jennings*, 252 Wis.2d 228, 647 N.W.2d 142, 147–48 (2002).

■■■ This approach is identical to our treatment of other mixed questions of fact and constitutional law, such as probable-cause and reasonable-suspicion determinations. *See Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding that appellate courts should review reasonable-suspicion and probable-cause determinations de novo); *Thompson v. Keohane*, 516 U.S. 99, 102, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) ("We hold that the issue whether a suspect is 'in custody,' and therefore entitled to *Miranda* warnings, presents a mixed question of law and fact qualifying for independent review."); *State v. Burbach*, 706 N.W.2d 484, 487 (Minn.2005) (holding that de novo review applies "to determine whether a search or seizure is justified by reasonable suspicion or by probable cause" and clear-error review applies to the factual determinations underlying those legal conclusions); *see also, e.g., Lilly*, 527 U.S. at 136, 119 S.Ct. 1887 (explaining that "[i]ndependent review is ... necessary" for "fact-intensive, mixed questions of constitutional law" in order "to maintain control of, and to clarify, the legal principles governing the factual circumstances necessary to satisfy the protections of the Bill of Rights" (citation omitted) (internal quota-

tion marks omitted)). When addressing mixed questions such as these, courts must carefully disentangle the facts from the law to articulate the basis for each element of the decision clearly.

In this case, the district court credited Hanson's testimony that he did not remember hearing Chavarria–Cruz's statement about a lawyer. We accept the court's finding that Hanson did not recall hearing the word "lawyer" during the interrogation.[5] Further, we accept Hanson's testimony about the factual circumstances of the interview, including the seating positions in the room, Chavarria–Cruz's soft voice and Spanish accent, and the fact that Chavarria–Cruz looked down much of the time. Nothing in the record contradicts that testimony.

Accepting these facts and reviewing the recording of the September 13 interview, we consider de novo whether a reasonable officer in Hanson's position would have heard Chavarria–Cruz's request for a lawyer. On the recording, Chavarria–Cruz speaks in a soft voice and has the accent of a Spanish speaker. But he does not mispronounce English words, and he can be easily understood. Specifically, Chavarria–Cruz's reference to wanting a lawyer can be clearly heard—a fact that Hanson himself later conceded upon listening to the tape.

Throughout the interview, Hanson and Chavarria–Cruz were able to communicate effectively and Chavarria–Cruz's speech at the crucial point on the tape is not noticeably softer than at other times. Although

---

**5.** The concurrence reads our decision as holding that the district court made a clearly erroneous factual finding regarding the audibility of Chavarria–Cruz's statement. We do not so hold. The district court's statement: "I was persuaded that it was difficult to hear what the defendant said on that one part" when read in context clearly meant that the court was persuaded that *Officer Hanson* had difficulty hearing what the defendant said. Specifically, the court credited Officer Hanson's testimony that he did not remember hearing the statement. We accept that factual finding, as we must. The district court, despite having an opportunity to listen to the tape as we have, did not make any findings regarding the recording on the record or even mention having listened to the recording.

Hanson later did not recall hearing Chavarria–Cruz's statement that he should get a lawyer, Hanson's immediate response to the statement does not suggest that Hanson misheard or failed to understand Chavarria–Cruz. Hanson responded by forcefully reiterating the strength of the State's case—"[t]hese guys are putting the gun in your hand"—and escalating his attempts to persuade Chavarria–Cruz to confess. These circumstances lead us to conclude that Chavarria–Cruz expressed himself sufficiently clearly that a reasonable officer would have heard his request for a lawyer.

No lawyer was provided for Chavarria–Cruz, and Hanson did not ask any questions to clarify Chavarria–Cruz's statement before continuing to interrogate him and eventually receiving a confession on October 19. We therefore hold that the district court erred in admitting the statements Chavarria–Cruz gave to police after he attempted to invoke his right to counsel, including the October 19 confession.[6]

The erroneous admission of a defendant's statements to police entitles the defendant to a new trial unless the admission of the statements was harmless beyond a reasonable doubt. *State v. Farrah*, 735 N.W.2d 336, 343 (Minn.2007). The State bears the burden of showing that the verdict in question was "surely unattributable to the error." *Id.; State v. Jones*, 556 N.W.2d 903, 910 (Minn.1996).

In this case, the State presented other evidence of Chavarria–Cruz's guilt in addition to his confession. Most significantly, Felipe Saldivar Alvillar, who was in the car on the night of the murder, provided testimony pursuant to a plea agreement implicating Chavarria–Cruz as the shooter. But Chavarria–Cruz's confession was unquestionably the strongest piece of evidence that the State used against him, and was the central focus of the prosecutor's closing argument in the case. Given the powerful evidentiary value of Chavarria–Cruz's confession, we hold that the error in admitting the statement was not harmless beyond a reasonable doubt. *See, e.g., Farrah*, 735 N.W.2d at 344. Chavarria–Cruz is therefore entitled to a new trial.

Reversed.

Concurring, GILDEA, DIETZEN, JJ.

GILDEA, Justice (concurring).

I agree with the result reached by the majority, but I reach this result on different grounds. I would hold that the State did not meet its burden of proving that appellant waived his right to counsel, and that therefore the admission of his confession was error.

### A.

Before proceeding with my analysis, I first address what in my view is the majority's departure from our precedent on the standard of review applicable in this case. The majority concludes that the district court's "determination" of "whether a suspect successfully invoked the right to coun-

---

6. The concurrence would resolve this case for Chavarria–Cruz on the sole ground that the State's evidence on the question of whether appellant invoked his right to counsel was conflicting. But we cannot hold that the State did not meet its burden of proof simply because the record contains conflicting evidence. *See, e.g., State v. Brown*, 209 Minn. 478, 485, 296 N.W. 582, 586 (1941) ("Where admissibility depends on a factual predicate, the existence of the facts constituting the predicate must be determined in passing on admissibility. A conflict in the evidence as to the existence of such facts simply necessitates a determination of the facts by resolving the conflict one way or the other."). We accept the district court's findings on the underlying factual issues unless they are clearly erroneous.

sel during a custodial interview" is a mixed question of law and fact. But we have previously held that a determination of "whether an accused invoked his right to counsel" is a "factual finding[ ]" that "we will uphold ... unless it is clearly erroneous." *State v. Hannon,* 636 N.W.2d 796, 804 (Minn.2001); *see also State v. Munson,* 594 N.W.2d 128, 139 (Minn.1999) ("In reviewing the trial court's factual findings, including whether an accused invoked his right to counsel, we will uphold a trial court's determination unless it is clearly erroneous."); *State v. Miller,* 573 N.W.2d 661, 671 (Minn.1998).[1]

The majority also concludes that the application of the reasonable officer standard to the facts receives de novo review. The majority cites *State v. Ray,* 659 N.W.2d 736, 742 (Minn.2003), for this proposition. I find no support in *Ray* for the majority's articulation of the standard of review.

### B.

In my view, it is not necessary to depart from precedent to resolve this case. It likewise is not necessary for us to write a new rule. We have repeatedly recognized that the State has the burden to demonstrate that the defendant waived his right to counsel in order for the State to admit the defendant's custodial statements. *E.g., Munson,* 594 N.W.2d at 141 (citing *State v. Camacho,* 561 N.W.2d 160, 168 (Minn. 1997); *State v. Phelps,* 328 N.W.2d 136, 139 (Minn.1982)). The State must prove the defendant's waiver by a preponderance of the evidence. *See State v. Clark,* 738 N.W.2d 316, 332 (Minn.2007). I would hold that the State did not meet that burden in this case.[2]

To prove that appellant waived his right to counsel by a preponderance of the evidence, the State must establish the waiver by the greater weight of the evidence. *See Aubin v. Duluth St. Ry. Co.,* 169 Minn. 342, 348, 211 N.W. 580, 583 (1926) ("Preponderance means to outweigh; to weigh more; to overcome."). In my view, the State did not meet that burden in this case because the State-produced transcript of Officer Hanson's interview with appellant reflects that appellant said "I think I need lawyer." The State agrees that the transcript so reflects and Officer Hanson himself testified to that effect at the hearing.

It is true that Officer Hanson also testified that he did not hear appellant request a lawyer during the interview, and the

---

1. The majority attempts to find support for its standard of review in *State v. Anderson,* 396 N.W.2d 564 (Minn.1986). But the issue for appellate review in *Anderson* was not whether the defendant, as a factual matter, had invoked his right to counsel, which is the issue under review here. The question for appellate review in *Anderson* was whether the defendant's confession was voluntary. *Id.* at 565. I do not disagree with the majority that the appellate court "independently" reviews the question of voluntariness. *Id.*

2. The majority cites *State v. Brown,* 209 Minn. 478, 485, 296 N.W. 582, 586 (1941), for the position that "we cannot hold that the State did not meet its burden of proof simply because the record contains conflicting evidence." The majority's reliance on *Brown* is misplaced. The question in *Brown* was whether statements a homicide victim made shortly before her death were admissible as dying declarations. *Id.* at 484, 296 N.W. at 586. The trial court determined that evidence as to the victim's awareness of her impending death was conflicting. *Id.* at 485, 296 N.W. at 586. The court submitted the predicate fact question—did the victim know her death was imminent when she made the statements—to the jury to decide, and no error was claimed on appeal as to that procedure. *Id.* at 485, 296 N.W. at 586. *Brown* is not helpful to the question at issue here because in *Brown* we did not discuss the impact of the State's presentation of conflicting evidence on an issue that the State must prove by a preponderance of the evidence.

district court found that it was "difficult to hear what the defendant said." [3] But given the State's admission that its transcript of the interview was accurate, I would hold that the State did not meet its burden of proving, by a preponderance of the evidence, that appellant waived his right to counsel. I therefore would reverse and remand.

DIETZEN, Justice (concurring).

I join in the concurrence of Justice Gildea.

**3.** In my view, the court's finding is not clearly erroneous. The majority says that appellant's "reference to wanting a lawyer can be clearly heard." That appellate judges, with the luxury of listening to the recording over and over, all the while knowing precisely for what to hunt, may hear the request does not make the district court's conclusion to the contrary clearly erroneous.