*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1684**

Lucas Gordon Bunde, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 18, 2014
Affirmed
Schellhas, Judge**

Blue Earth County District Court
File No. 07-CV-13-740

Patrick J. Casey, Daniel J. Bellig, Joseph A. Gangi, Farrish Johnson Law Office, Mankato, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory C. Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the district court's order sustaining the revocation of his driving privileges, arguing that the district court should have suppressed the urine-test

results because the vehicle stop was unlawful and he did not voluntarily consent to the test. We affirm.

## FACTS

Respondent Minnesota Commissioner of Public Safety revoked appellant Lucas Bunde's driver's license under the implied-consent law for driving with an alcohol concentration of 0.12. Bunde petitioned the district court to rescind his license revocation and moved to suppress his urine-test results. The court conducted a hearing at which Mapleton Police Officer Andrew Hagen testified that, while on patrol in Mapleton at about 1:20 a.m., he observed through his left rearview mirror a vehicle with an unilluminated passenger-side headlight. Officer Hagen stopped the vehicle after it passed him. His squad-car camera began recording about one minute before he initiated the traffic stop. After observing several indicia of intoxication, including the results of Bunde's field sobriety tests and preliminary breath test, Officer Hagen arrested Bunde on suspicion of driving while impaired and transported him to the Mapleton Police Department, where he read Bunde the Minnesota Implied Consent Advisory. Bunde stated that he understood the advisory, declined to speak to an attorney, and provided a urine sample for alcohol testing. Officer Hagen did not obtain a warrant before asking Bunde if he would provide a urine sample for testing. Bunde testified that both of his vehicle's headlights were working when he began driving approximately 20 minutes before Officer Hagen stopped him and he was surprised when Officer Hagen informed him that one of his headlights was not illuminated.

The district court sustained Bunde's license revocation, concluding that the traffic stop was lawful and the urine test was not coerced. This appeal follows.

## DECISION

The United States and Minnesota Constitutions prohibit warrantless searches and seizures, subject to limited exceptions. U.S. Const. amend. IV; Minn. Const. art I, § 10; *see generally Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) (noting that "[t]he Fourth Amendment[ is] applicable through the Fourteenth Amendment to the States").

### The Stop

An officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)). Appellate courts "review de novo a district court's determination of reasonable suspicion of illegal activity." *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012). "Evidence resulting from an unreasonable seizure must be excluded." *Id.* Driving after dark with only one illuminated headlight violates Minnesota traffic law. *See* Minn. Stat. §§ 169.48(a)(1), .49(a) (2012). "Ordinarily, if an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

We will not set aside the district court's findings unless they are clearly erroneous. *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002). "[Appellate courts] hold findings of fact as clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed," *id.* (quotation omitted), and "defer to the

3

district court's credibility determinations," *Lewis v. Comm'r of Pub. Safety*, 737 N.W.2d 591, 594 (Minn. App. 2007). On this record, taking into account our deference to the district court's credibility determinations, Hagen had reasonable suspicion of illegal activity.

Based on Officer Hagen's squad-car video, Bunde argues that his passenger-side headlight was illuminated, contrary to Officer Hagen's testimony; that Officer Hagen did not have reasonable suspicion to stop his vehicle; and that, because the video shows that the facts are undisputed, we should not defer to the district court's factual findings. For legal support, Bunde cites *State v. Chavarria-Cruz*, 784 N.W.2d 355, 362–65 (Minn. 2010). But, even when the record includes a video, we review factual findings for clear error. *See Chavarria-Cruz*, 784 N.W.2d at 363 (noting that while "courts should rely primarily" on an available recording, appellate courts "apply a clear-error standard of review to . . . underlying factual determinations" of "[t]he factual elements—including the suspect's precise words, the volume at which the words were spoken, the volume relative to the suspect's other words, the positions of participants and the recorder in the room, and the actions and impressions of the suspect and officer, among others—[that] can be discerned from the recording, if one is available, and from the testimony of the people involved"); *State v. Shellito*, 594 N.W.2d 182, 186 (Minn. App. 1999) ("We hold that the district court has the discretion to draw its own conclusions and make factual findings from its independent review of a video recording of a traffic stop.").

Bunde also cites caselaw regarding video recordings from other jurisdictions. But we must follow relevant Minnesota precedent. *See Mahowald v. Minnesota Gas Co.*, 344

4

N.W.2d 856, 861 (Minn. 1984) (noting that, while decisions from courts of other states are "persuasive," they are "not binding on us as authority"); *State v. Allinder*, 746 N.W.2d 923, 925 (Minn. App. 2008) ("[T]his court is bound to follow supreme court precedent.").

In *Chavarria-Cruz*, the supreme court noted that "[t]he district court, despite having an opportunity to listen to the tape as we have, did not make any findings regarding the recording." 784 N.W.2d at 364 n.5. In contrast, in this case, the district court stated that it

> carefully reviewed the squad video and was unable to definitively conclude whether or not [Bunde]'s passenger-side headlight was operating properly. However, the Court credits Officer Hagen's testimony and finds that Hagen observed the un-illuminated headlight, which constituted an equipment violation. *See* Minn. Stat. § 169.49(a). This observation justified an investigatory stop of [Bunde]'s vehicle.

Bunde argues that the district court clearly erred by finding that the video is not definitive and crediting Hagen's testimony. Based on our review of the video, we conclude that the video is not definitive with respect to the illumination of Bunde's passenger-side headlight. We therefore conclude that the district court did not clearly err by determining that it "was unable to definitively conclude whether or not [Bunde]'s passenger-side headlight was operating properly." *See Shellito*, 594 N.W.2d at 186 ("[T]he district court has the discretion to draw its own conclusions and make factual findings from its independent review of a video recording of a traffic stop."). We defer to the district

court's finding that Hagen credibly testified that Bunde was driving with only one illuminated headlight.

### The Urine Test

Bunde argues that his consent to the urine test was unlawfully coerced, but he disputes no record facts pertaining to his urine test. "When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004). We will overturn questions of law only if we determine that the district court has erroneously construed and applied the law to the facts of the case. *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App. 1986).

The collection and testing of urine is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989). If an individual consents to a search, police need not obtain a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973). "[T]he State must show by a preponderance of the evidence that the defendant freely and voluntarily consented" to the search. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "Whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* (quotation omitted). Under *Brooks*, consent "is assessed by examining all of the relevant circumstances." *Id*. at 569. This examination requires us to "consider the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id*. (quotation omitted). The "nature of the encounter includes how the police came to suspect [the driver] was driving under the

6

influence, their request that he take the chemical tests, which included whether they read him the implied consent advisory, and whether he had the right to consult with an attorney." *Id.* "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. And this court may affirm on any grounds. *See Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987) ("[W]e will not reverse a correct decision simply because it is based on incorrect reasons.").

Acting without the guidance of *Brooks*, the district court found that Bunde's consent to the urine test "was free from coercion and voluntary" and concluded that the urine test was constitutional. Applying *Brooks*, we look to the totality of the circumstances to determine whether Bunde's consent to submit to a urine test was coerced. *See Brooks*, 838 N.W.2d at 568. Nothing in the record before us suggests that Officer Hagen threatened Bunde before he consented to provide a urine sample.

Bunde argues that the implied-consent advisory is at least somewhat coercive because it indicates that he is required to submit to a chemical test. But, in *Brooks*, the supreme court indicated that the implied-consent advisory does not coerce the subject into taking the test; the advisory instead "ma[kes] clear to [the driver] that he ha[s] a choice of whether to submit to testing." *Id*. at 572. Bunde argues that his case is distinguishable from *Brooks* because he did not consult an attorney. But Officer Hagen offered Bunde the opportunity to consult an attorney, and Bunde stated that he understood the implied-consent advisory and did not wish to speak with an attorney. Bunde argues that the implied-consent recording shows that Officer Hagen asked Bunde,

7

"Will you take the blood or urine test" and that the question suggested that Bunde did not have a right to answer no; he merely had the right to answer blood or urine. We decline to address this argument because Bunde raises it for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)).

Based on the totality of circumstances, we conclude that Bunde freely and voluntarily consented to provide a urine sample for testing. The district court did not err by declining to suppress the urine-test results. We therefore affirm the district court's order sustaining the revocation of Bunde's driver's license.

**Affirmed.**