*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1484**

State of Minnesota,
Respondent,

vs.

Gary John Bogatz, Jr.,
Appellant.

**Filed November 13, 2023**
**Reversed and remanded**
**Smith, John, Judge[*]**

Becker County District Court
File No. 03-CR-20-1372

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Brian W. McDonald, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Paul J. Maravigli, Special Assistant Public Defender, Minneapolis, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Wheelock, Judge; and Smith, John, Judge.

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SMITH, JOHN**, Judge

We reverse the conviction and remand to the district court for a new trial because the district court erred by denying appellant Gary John Bogatz, Jr.'s motion to suppress statements he made during a custodial interrogation when law enforcement officers did not appropriately limit questioning following Bogatz's ambiguous invocation of his right to counsel.

## FACTS

Respondent State of Minnesota charged Bogatz with first-degree arson based on allegations that he started a fire on September 22, 2018, in Detroit Lakes. After his arrest, two law enforcement officers interrogated Bogatz at the Becker County Jail. One of the officers read Bogatz his *Miranda* rights, including the right to have an attorney present during questioning. Immediately after the Miranda rights were read the following exchange took place:

> BOGATZ: Yeah. I really think it would be smart for me to have a lawyer.
>
> OFFICER: Okay.
>
> BOGATZ: I'm kind of—
>
> OFFICER: So let me just finish this part first, okay?
>
> BOGATZ: Yeah.
>
> OFFICER: So I read you your rights. You understood those rights?

BOGATZ: Yeah.

OFFICER: Okay. And do you wish to talk to us now about why we're here and any other information that we may be able to share with you?

BOGATZ: Yeah. Yeah, I mean, I'd like to hear what you guys have to say.

OFFICER: Okay. So, you're waiving your rights at this point to talk to us so that you can hear what we have to say? I just want to make it clear.

BOGATZ: Okay.

OFFICER: Okay?

BOGATZ: Yeah.

OFFICER: Is that a yes?

BOGATZ: Yes.

OFFICER: Because I'll be honest with you, I'm willing to share more information with you—

BOGATZ: Okay

OFFICER: —than we did and answer any other questions you have and hopefully get some more information from you. But I just want to make it clear that, before we can do that, you have to understand your rights and agree to speak with us?

BOGATZ: Yes.

OFFICER: That's a yes?

BOGATZ: Yes.

Following this exchange, the officers questioned Bogatz about the fire. Bogatz first claimed he started the fire by accident when he lit a napkin with a grill lighter he was using as a source of light. In response to further questioning, Bogatz stated that the owner of the building and the owner's son told Bogatz to start the fire. Bogatz then described how he broke into the building to make it look like the building had been burglarized and stated that his roommate started the fire.

Bogatz moved to suppress the statements he made to the police on the grounds that he had invoked his right to counsel at the beginning of the custodial interrogation. The district court denied Bogatz's motion, concluding that his initial response to the *Miranda* warning was "equivocal and ambiguous as to whether he was invoking his right to an attorney," and that the officers appropriately directed subsequent questioning to establishing Bogatz's "true desires regarding his rights," in accordance with Minnesota law. Accordingly, the district court denied Bogatz's motion to suppress.

At trial, the state presented the jury with the entire hour-and-a-half video of Bogatz's interrogation, as well as a transcript of the interrogation. The state also made repeated reference to Bogatz's statements throughout both opening and closing arguments. At the conclusion of trial, the jury found Bogatz guilty of first-degree arson. The district court sentenced Bogatz to an executed 68-month prison sentence and ordered him to pay restitution. Bogatz now requests that this court reverse the conviction and remand for a new trial.

**DECISION**

Bogatz argues that the district court erred by denying his motion to suppress and that, because the error was not harmless, he is entitled to a new trial.

**I.    The district court erred in denying Bogatz's motion to suppress.**

Under the United States and Minnesota Constitutions, a defendant cannot be compelled to be a witness against themselves in a criminal case. U.S. Const. amend. V; Minn. Const. art. I, § 7. The United States Supreme Court has held that the right to have counsel present during a custodial interrogation is an indispensable prophylactic measure to protect an accused's Fifth Amendment privilege against self-incrimination. *State v. Risk*, 598 N.W.2d 642, 647 (Minn. 1999) (citing *Miranda v. Arizona*, 384 U.S. 436, 469 (1966)).

To successfully invoke their right to counsel, the accused must articulate their desire to have counsel present with sufficient clarity for a reasonable police officer in the circumstances to understand the statement as a request for an attorney. *Id.* at 648 (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). Once an accused has invoked their right to counsel, all police interrogation must cease, but only if the invocation of counsel was unambiguous. *State v. Miller*, 573 N.W.2d 661, 671 (Minn. 1998) (first citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); and then citing *Davis*, 512 U.S. at 461-62). Where a suspect's request for counsel is equivocal or ambiguous, but could be construed as a request for counsel, Minnesota law requires that all questioning cease except for "narrow questions designed to 'clarify' the accused's true desires respecting counsel." *State v. Robinson*, 427 N.W.2d 217, 223 (Minn. 1988).

Alleged violations of a suspect's right to counsel present mixed questions of fact and law. *State v. Chavarria-Cruz*, 784 N.W.2d 355, 363 (Minn. 2010). We review factual determinations for clear error. *State v. Ortega*, 798 N.W.2d 59, 70 (Minn. 2011). We review application of the reasonable officer standard and application of the "stop and clarify" rule de novo. *Id.*

We agree with the district court that Bogatz's invocation of his right to counsel was equivocal or ambiguous. However, since Bogatz's invocation of his right to counsel could be construed as a request for counsel, all further questioning should have ceased "except [for] narrow questions designed to 'clarify' the accused's true desires respecting counsel." *Robinson*, 427 N.W.2d at 223. We hold that the officers' follow-up questions did not satisfy this requirement.

While the officers' follow-up questions did ask Bogatz about his rights generally, the law requires more. Bogatz's ambiguous invocation of his right to counsel could be construed as a request for counsel, so the officers were obligated to confine further questioning to the narrow issue of clarifying Bogatz's ambiguous request. The officers did not appropriately limit their follow-up questions, but rather asked if Bogatz wanted to speak with them and hear the information that they could share with him. Bogatz stated that he would "like to hear what you guys have to say," after which the officers did not address Bogatz's ambiguously expressed desire for counsel. Instead, they asked him if he was "waiving [his] rights" so he could hear what they had to say. The focus of the discussion following Bogatz's ambiguous invocation of counsel was not clarifying Bogatz's request. The focus of the conversation was whether Bogatz wanted to hear what

the officers had to say. Consequently, the officers' follow-up questioning was improper, and Bogatz's subsequent statements should have been suppressed.

In *Ortega*, upon which the state relies, the suspect asked if he was supposed to have a lawyer present. 798 N.W.2d at 64. The officer responded: "[T]hat's what I'm going to tell ya, I'm going to give you your rights, okay?" *Id.* After responding to a prior question from the suspect, the officer explained that he could not speak with the suspect if the suspect wanted to speak with an attorney. *Id.* After the officer read a *Miranda* warning, the suspect confirmed he understood his rights. *Id.* The officer then asked if the suspect wished to tell officers his "side of the story," to which the suspect replied that he did. *Id.* The Minnesota Supreme Court held that the suspect's constitutional right to counsel had not been violated because providing the suspect "with an accurate *Miranda* warning is sufficient as a matter of law to satisfy the 'stop and clarify' rule." *Id.* at 72.

*Ortega* is unlike the present case because of the difference in timing of the equivocal request for counsel relative to the *Miranda* warning. Critically, in *Ortega*, the suspect's ambiguous request occurred before the officer informed him of his rights. *See id.* at 64. After his ambiguous request, the suspect heard his rights, confirmed that he understood his rights, and decided to speak with the officers, thereby dispelling the ambiguity over his desire to have counsel present. *See id.*

Here, however, the *Miranda* warning preceded Bogatz's equivocal invocation of counsel. The *Miranda* warning could not have served to clarify Bogatz's ambiguous request for counsel because Bogatz had not yet made his request when the officers gave

7

the warning. Since Bogatz's request followed the *Miranda* warning, rather than preceded it, *Ortega* does not control in this case.

Here, the officer never asked Bogatz whether he was willing to waive his *right to remain silent*. Instead, after reading the advisory, the officer asked, "And do you wish to talk to us now about why we're here and any other information that we may be able to share with you?" Whether Bogatz wished to talk about why officers were present and learn "other information" from the officers is not relevant. This was a tricky way of getting Bogatz to say yes rather than clarifying whether he was giving up his right to remain silent and waiving his right to counsel.

In conclusion, because we agree with the district court that Bogatz's invocation of his right to counsel was ambiguous, we apply the "stop and clarify" rule to the questioning that followed. We do not agree that the officer's follow-up questions were appropriately limited to the narrow issue of clarifying Bogatz's desire to have counsel present, therefore we hold that Bogatz's constitutional right to counsel was violated, and the district court erred in denying Bogatz's motion to suppress. We now turn to whether the error was harmless.

II.     **The denial of Bogatz's motion to suppress was not harmless error.**

"When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012). For an error to be harmless beyond a reasonable doubt, the jury's verdict must have been "surely unattributable" to the error. *State v. McInnis*, 962 N.W.2d 874, 886 (Minn. 2021) (quoting *Davis*, 820 N.W.2d at 533). For this analysis, we consider "the

8

manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defendant," as well as whether there was overwhelming evidence of guilt. *Id*. We conclude that all five factors militate in favor of a determination that the error in this case was not harmless.

Regarding the manner of presentation, the state made extensive use of Bogatz's custodial statements throughout trial, including presenting the jury with the full video of Bogatz's custodial interrogation along with the transcript of the interrogation. The state argues that Bogatz's statements were presented without "drama or fanfare," but the fact that the jury watched the entire hour-and-a-half interrogation, and the prosecutor's repeated use of direct quotations from Bogatz's custodial statements weigh against a finding of harmless error.

The state also argues that the evidence was not highly persuasive, but this argument is belied by the state's own extensive use of the evidence. Bogatz's custodial statements were the central focus of the state's case. The prosecutor began both opening and closing arguments with direct quotations from Bogatz's custodial statements, and believed the interrogation was persuasive enough to warrant showing the entire video of the interrogation to the jury. This factor, as well as the third (use during closing argument), weighs against a finding of harmless error.

As to whether Bogatz effectively countered the evidence, we determine that he did not. The state's argument to the contrary is unavailing. Bogatz rested without presenting any witnesses or evidence of his own, and if Bogatz had effectively countered the evidence of his custodial statements, one would be left wondering how the jury found Bogatz guilty

9

at all, given the lack of other direct evidence of guilt. This factor weighs against a finding of harmless error.

Regarding the final point, the state itself acknowledges that the evidence of Bogatz's guilt "falls short of being overwhelming." This highly important factor weighs against a finding of harmless error.

Because we determine that the district court erred in denying Bogatz's motion to suppress, and because we cannot say that the error was harmless beyond a reasonable doubt, we reverse and remand to the district court for a new trial.

**Reversed and remanded.**